# BUFFALO SUPERIOR COURT.

### HENRY RAWLS AND OTHERS agt. JOHN G. DESHLER.

A *sale of chattels* may be conditional either as to the right of property in them, or as to the possession of them.

When the right of property passes to the vendee, but not the *right to the possession*, the possession may be delivered conditionally, so that the vendor can upon the breach of the condition, recover the possession of the chattels, except as against a *bona fide* purchaser from the vendee.

When the right of property is not to vest in him to whom the chattels are delivered, until the price is paid, the owner can reclaim them from a *bona fide* purchaser of them from him to whom the possession of them was delivered, upon breach of the condition.

D. had a quantity of corn in store in H.'s elevator at B. G. on Tuesday asked D. the price of the corn. D. said 57 cents a bushel. G. asked when he must have the money. D. said, right along. G. said, he would get the corn out by Thursday, and if he did not get it out before, he would pay for it then any way. D. said that would do, and gave G. an order on the elevator to " deliver to G. or order, 4,238 bushels white corn, cargo Potomac, subject to my order until paid for." G. on the same day presented D.'s order to the elevator, and had the corn shipped on canal boat for N. Y. R. made advances in good faith upon the bill of lading of the corn. Afterwards, and on Thursday, G. failing to pay for the corn, D. pursued the canal boat and recovered the possession of the corn:

*Held*, that the title to the corn passed to G.; that the risk of accident to it was upon G. :

*Held* also, that R. had to the extent of his advances, a superior right to D. in the corn.

In such cases, in order to confer upon a *bona fide* purchaser rights superior to the vendor, there must be an actual or constructive delivery of the chattel to him.

The symbolical delivery of bills of lading and other similar instruments, is a sufficient delivery of the chattel when an actual delivery is impossible (*Steelyards agt. Singer*, 2 *Hilton*, 96, *questioned*).

*March General Term*, 1862.

*Before* VERPLANCK, MASTEN *and* CLINTON, *Justices.*

THIS cause was tried before Justice MASTEN and a jury. Upon the trial, a verdict was directed for the plaintiffs. The defendant excepted. The exceptions were ordered to be heard at the general term in the first instance. The general term ordered judgment upon the verdict. The facts sufficiently appear in the following opinion of the general term :

Rawles agt. Deshler.

H. C. Day, *for plaintiffs.*
Ganson & Smith, *for defendant.*

Masten, J. This is an action for the conversion by defendant of 4,238 47-56 bushels of white corn The case comes before us upon exceptions. The court directed a verdict for the plaintiffs, to which direction the defendant excepted.

The corn in question belonged to the defendant, and was in store on his account in the Hatch elevator in this city. The defendant also had some mixed corn in store in the same elevator. On Tuesday morning, the 18th day of September, 1860, Griffin called at his office and asked the price of the corn; defendant said, "fifty-seven cents for the white corn, and fifty-six for the mixed." Griffin went away and in a short time returned and inquired of defendant, when he must have his money, if he took the corn? Defendant replied, "right along." Griffin said, "boats are scarce, and I may not be able to get it out for a day or two." Defendant said, "that would not do, he wanted it more specific." Griffin said, "he would get it out by Thursday, and if he did not get it out before, he would pay for it then any way." Defendant said, "that would do." The defendant thereupon gave Griffin the following order for the corn in question :

"Buffalo, Sept. 18, 1860.
"Hatch Elevator :
"Deliver to A. L. Griffin, Esq., or order, 4,238 47-56 bush. white corn, cargo Potomac, subject to my order until paid for.         John G. Deshler."

The defendant at the same time gave to Griffin a like order for the mixed corn. Griffin on the same day (September 18th), indorsed and delivered the above order for the white corn to one Van Buren, a freight broker, with directions to ship the corn to New York. Van Buren on the same day presented the said order for the white corn

to the Hatch elevator, and had the corn loaded upon the canal coat L. B. Trowbridge, of which one Wendt was the owner and captain, and which plied between the cities of Buffalo and Albany. Van Buren and Wendt signed a bill of lading of the corn, by which the corn was to be delivered at Troy. The bill of lading expressed that the corn was shipped by Van Buren as agent and forwarder, and it was delivered care Silliman, Matthews & Co., Troy, N. Y., canal freight to Troy, 11½ cents per bushel. The canal boat left Buffalo with the corn on the said 18th day of September.

Silliman, Matthews & Co., were the agents of Van Buren at Troy. On the next day (September 19th), Van Buren delivered to Griffin the following paper, in respect to the corn in question :

" BUFFALO, Sept. 19, 1860.

" Shipped in good order by A. L. Griffin, on board of canal boat L. B. Trowbridge, B. T. Co. Line, ——, master, the following articles to be delivered in like good order as addressed :

" Acc't A. L. Griffin, 4,238 47-56 bushels white corn, care Rawls & Seymour, New York. Freight to New York 14½ cents per bushel, consignees pay towing.

" JAMES VAN BUREN."

On the said 19th day of September, Griffin made his draft upon Rawls & Seymour, the plaintiffs, payable to his own order, at twenty days, for $2,120. He wrote his name upon the back of said draft, and also upon the back of said bill of lading signed by Van Buren, attached them together, and delivered them to White's bank at Buffalo. The bank discounted the draft upon the strength of the bill of lading, and paid over the proceeds to Griffin, who applied them to his own use. Griffin on the same day (September 19th), advised the plaintiffs by letter of the shipment of the corn and of the draft.

The plaintiffs are commission merchants at the city of New York. They received the letter of advice on the 20th

of September.   On the 21st of September, before eleven
o'clock in the morning, they accepted the draft and detached
the bill of lading from the draft and retained it.   They had
no funds of Griffin's in their hands, and accepted the draft
upon the strength of the corn, and in good faith.   They
paid the draft at its maturity.   On Thursday, Griffin failed
to make payment for the corn, and the defendant, learning
that it had been shipped on the Trowbridge, went in pur-
suit of her, and on the afternoon of the 21st day of Sep-
tember, overtook her a few miles east of Rochester, and
replevied the corn.   The action was against Wendt, the
captain of the canal boat, and judgment was obtained
therein by default.

The first question to be considered in the natural order
is, what was the legal effect of the transaction between the
defendant and Griffin, in respect to the corn in question?  Did
the title or right of property in the corn pass to Griffin?
Was the sale conditional?  and if so, was it in respect to
the property in or the possession of the corn?  or was a
lien only reserved for the price?   If the title or property
in the corn did not pass to Griffin, as between him and the
defendant, but only the possession, then we are of the
opinion that the title of the plaintiffs is defective, and that
of the defendant must prevail.

" The universal and fundamental principle of our law of
personal property is that no man can be divested of his
property without his own consent, and, consequently, that
even the honest purchaser under a defective title cannot
hold against the true proprietor." VERPLANCK, *Senator, in
Saltus* agt. *Everett* (20 *Wend.* 275).

In *Covill* agt. *Hill* (4 *Denio R.* 323), Justice BRONSON
says :  " It is a principle of the common law, which has but
few exceptions, that a man cannot be divested of his pro-
perty without his consent ; and although possession is one
of the most usual evidences of title to personal chattels,
yet, as a general rule, mere possession will not enable a man

to transfer a better title than he has himself, or than he has been authorized by the owner to grant; exceptions in favor of trade are allowed in the case of money and negotiable instruments. But as to other personal chattels, the mere possession, by whatever means it may have been acquired, if there be no other evidences of property or authority to sell from the true owner, will not enable the possessor to give a good title."

*Nemo plus juris ad alium transferre potest quam ipse habet*, is the axiom of the common law, and it has resisted the innumerable efforts that upon some specious plea or other have been made to break in upon it.

In *Miller* agt. *Race* (1 *Burr*. 452), money and negotiable instruments were excepted from the operation of the above maxim, on the ground of the necessities of currency and trade, "by reason of the course of trade which creates a property in the holder."

In *Saltus* agt. *Everett*, Senator VERPLANCK says : "That after a careful examination of the English cases and those of this state, he comes to the general conclusion that the title of property in things movable, except money and negotiable instruments, can pass from the owner only by his own consent and voluntary act, or by operation of law, and that the honest purchaser, who buys for a valuable consideration in the course of trade, will be protected in his title against the true owner in those cases, and those only, where such owner has, by his own direct and voluntary act, conferred upon the person from whom the *bona fide* vendee derives title, the apparent right of property as owner, or of disposal as an agent, of which there are two distinct classes, and no more. The first is where the owner, with the intention of sale, has in any way parted with the actual property of his goods with his own consent, though under such circumstances of fraud or error as would make that consent revocable, rescind the sale, and authorize the recovery of the goods as against such vendee. But if the

property passes into the hands of honest purchasers, the first owner must bear the loss. The other class of cases is where the owner ' has given the external *indicia* of the right of disposing of his property,' or by exhibiting to the world a third person as having power to sell or dispose of them."

I do not think that the two classes of cases mentioned by the learned senator can be strictly considered as exceptions to the universal and fundamental principles of law, that no man can be divested of his property without his own consent or act, or by operation of law, nor does the learned senator so consider them.

In the case of *Ash* agt. *Putnam* (1 *Hill*, 302), however, Justice COWEN seems to consider the first class as an exception to the general rule above stated. The only exception which I find to be established to this fundamental principle is in respect to money and negotiable instruments.

When the owner is induced by fraud or false representations to part with his goods, he may reclaim them. This does not proceed on the ground that the property in the goods does not pass by the sale, but that the dishonest purchaser shall not hold them against the deceived vendor. The vendor may rescind the sale or not at his election, but in the exercise of this election he is governed by legal rules. He must exercise it within a reasonable time. He must make restitution of what he has received from his vendee, and he cannot exercise it to the prejudice of an honest and fair purchaser for value, from the fraudulent vendee. The same rule in reference to a *bona fide* purchaser obtains also in respect to real estate. And I am not able, upon principle or reason, to see any difference whether the fraud or representations by which the chattels were obtained amount to a felony or not, so long as the vendor intended to part with the property in them, and the vendee was bound by the sale. A sale of chattels may be conditional, either as to the right of property in them or as to the possession.

By the civil law, delivery upon the sale of a chattel is essential to transfer the right of property and perfect the title, even as between the vendor and vendee. But by the common law, the contract of sale of personal property without delivery or the payment of the price, transfers, as between the parties, the right of property in the thing (*Olyphant* agt. *Baker*, 5 *Denio R.* 379).

Chancellor KENT, in his *Commentaries*, says: "When the terms of the sale are agreed on and the bargain is struck, and everything the seller has to do with the goods is complete, the contract of sale becomes absolute as between the parties without actual payment or delivery, and the property and risk of accident to the goods vests in the buyer. He is entitled to the goods on payment or tender of the price, and not otherwise, when nothing is said at the sale as to the time of delivery or the time of payment. For though the vendee acquires a right of property by the contract of sale, he does not acquire a right of possession of the goods until he pays or tenders the price" (*2d volume*, 492).

When the right of property passes to the vendee, but not the right of possession, the possession may be delivered conditionally, so that the vendor can as against the vendee, rescind the sale or enforce his lien if the price is not paid according to the condition. But he cannot in such case do so to the prejudice of a *bona fide* purchaser for value from his vendee. (*Haggerty* agt. *Palmer*, 6 *John. Ch. R.* 437; *Buck* agt. *Grismhaw*, 1 *Edward's Ch. R.* 140; *Smith* agt. *Lynes*, 1 *Selden's R.* 41.)

It is also well settled that a sale and delivery of chattels on condition that the right of property in them is not to vest in the vendee until the purchase money is paid or secured, does not pass the right of property to the vendee until the condition is performed. (*Herring* agt. *Hoppock*, 15 *N. Y. R.* 409; *Herring* agt. *Willard*, 2 *Sand.* 418; *Strong* agt. *Taylor*, 2 *Hill*, 326; *Patton* agt. *McCane*, 15 *B. Monroe*,

[*Ky.*] 555 ; *Coggill* agt. *Hartford & New Haven R. R.* 3 *Gray*, 545 ; *Copeland* agt. *Bosquet*, 4 *Washington C. C. R.* 588.)

In such case, when the contract is entered into in good faith, and for the sole purpose apparent on its face, and without any design to give the vendee by the possession of the property a false credit, or to enable him to impose upon innocent persons, it is impossible by a sound course of reasoning to establish the proposition that a *bona fide* purchaser from such possessor can obtain a superior title to that of the true owner.

The possession is under a contract *for* sale and not *of* sale. The possessor has no title, and only a bare right of possession. He is the bailee of the vendor. The mere possession, as we have already seen, does not carry with it an authority to sell. The contract confers no such authority, and furnishes no false evidence of title, for his rights appear upon its face. It is difficult to see how, upon the well established principles of law, he can convey to any one more than he had.

The distinction between a conditional sale, as it respects the right of property, and a sale conditional only as to the possession, or a sale induced by fraud, is, that in the former there is bare possession without any right of property, in the latter two there is a right of property and also the possession. This question has been decided according to the views I have expressed, in the following cases : (*Patton* agt. *McCane*, 15 *B. Monroe R.* 555 ; *Coggill* agt. *Hartford & New Haven R. R. Co.* 3 *Gray*, 545 ; *Sargent* agt. *Metcalf*, 5 *Gray R.* 306 : *Deshon* agt. *Bigelow*, 8 *Gray R.* 159 ; *see* also *Copeland* agt. *Bosquet*, 4 *Washington C. C. R.* 588 ; *Herring* agt. *Willard*, 2 *Sand. R.* 418.)

In *Steelyards* agt. *Singer* (2 *Hilton*, 96), it was held as matter of law, that a *bona fide* purchaser from a vendee who had but the bare possession under a contract in which no title was to vest in him until the purchase money was paid,

obtained a superior title to the true proprietor.   The case does not appear to have been well considered.   The cases cited are all cases in which the person from whom the *bona fide* purchaser derived title, had the right of property as well as the possession of the goods.   The learned judge who delivered the opinion in *Steelyards* agt. *Singer*, did not seem to establish the exception which he made in that case to the general and well established principle that no man can be deprived of his property, except by his own consent or voluntary act, and that no one can transfer to another a better title than he has himself, upon the exigencies of trade or currency, but upon the ground that the article in question (a sewing machine) has become an ordinary household chattel.   We do not approve of the reasoning, nor of the exception.   Exceptions to general rules or principles, should never be sanctioned, except upon the most cogent necessity and reason; they should be supported by general considerations, and not merely upon individual cases of hardship.   They multiply uncertainties and increase litigation.   Efforts have been made by counsel to establish exceptions to the general principle of law in respect to the transfer of property in chattels, in favor of the honest purchaser for a valuable consideration, from him to whom the true owner had entrusted the mere possession of his goods on the ground of the exigencies of trade, and on the further ground that when one of two innocent persons must suffer, the loss should fall upon him who has entrusted the possession of his goods to a third person, and thus furnished him with the appearance of ownership, than upon an innocent purchaser from such third person, who had purchased and parted with his money upon the faith of such appearances.

But the courts of England and of this state have decided again and again that no such exceptions, with the single one of money and negotiable instruments, exist.   Where the owner has been guilty of negligence, or done any act

beyond that of simply entrusting the possession of his goods to another, by which such person has been aided in perpetrating the fraud upon the innocent purchaser, the title of the latter will prevail over that of the true owner. I believe that the rules of law, as they are established, furnish a better security of the rights of property, and are less productive of frauds than they would be if the exceptions of which I am speaking were engrafted upon them. The carelessness and irregularities which even now oftentimes characterize mercantile transactions, would greatly increase, and the maxim " be careful purchaser," would no longer exist.

The value of personal chattels would be greatly depreciated if the right to entrust their possession to others did not exist as an element of proprietorship. The necessities and exigencies of commerce, about which so much is said, require that agents, bailees and others, should be entrusted with the possession of chattels, and if the principles of law, to which I have alluded, should be broken in upon, it would not only open wide the doors of fraud, and place the owner at the mercy of every one who should have the possession of his goods, but would also under the temptation of a good bargain, lead the purchaser to disregard the wholesome caution inculcated by the maxim *caveat emptor*, and which, if felt, would probably have led to the discovery of the truth.

But it is not necessary to speculate as to consequences. It is the duty of the court to declare the law as it finds it, and not to legislate. We are of the opinion that by the contract of sale between the defendant and Griffin, and the delivery of the corn upon the order of the defendant, the property in the corn passed from the defendant to Griffin, and that the defendant delivered the possession of it conditionally, or reserved a lien upon it for the purchase price. It was contended on the part of the defendant, that the words " subject to my order until paid for," upon the face

of the delivery order, mean that the right of property was not to pass until the price of the corn was paid, and are equivalent to, " the title to the corn is not to pass until paid for." But we think not. The corn after the delivery was at the risk of Griffin. If it had been injured or destroyed before Thursday by any casualty, the loss would have fallen upon Griffin. The bargain was struck, the statute of frauds was satisfied, and the property in the corn vested in Griffin, subject to the " order," *i. e.*, control, direction, lien of defendant until paid for.

We therefore are of the opinion that Griffin had the right of property in the corn as well as the possession of it, and could transfer as against the defendant, the right of property in the corn by a perfect title to a purchaser in good faith and for a valuable consideration, in the usual course of trade. The plaintiffs in good faith made advances to Griffin upon the strength of the corn, by accepting his draft upon them. We are of the opinion that a sufficient transfer and delivery of the corn was made to the plaintiffs before the defendant retook it.

The defendant had done nothing to induce the plaintiffs to accept the draft of Griffin, and as I understand the law, an actual or constructive delivery of the corn to the plaintiffs was necessary to confer upon them superior rights in the corn to the defendant. When an actual delivery is impossible, it may be made symbolically, or constructively, as of goods on ships at sea, by an indorsement of the bill of lading. It is now well settled that bills of lading and other documents of a similar nature, have not the character of negotiability, and that the indorsement and transfer of them are merely evidence of sale, and as a symbolical delivery " operates no farther than a direct delivery of the goods would have done " (*Note by American editors to Lickbarrow* agt. *Mason*, 1 *Smith's Leading Cases*, 890).

The instrument which Van Buren gave to Griffin was not strictly speaking a bill of lading. Van Buren had no inter-

est in the canal boat, he had not even chartered it. He loaded the corn upon the boat and took a regular bill of lading, signed by the captain, for the delivery of the corn to Silliman, Matthews & Co., at Troy, for himself. This he probably did to perform his undertaking with Griffin to forward or carry the corn to New York. The instrument Van Buren gave to Griffin is in the form of a bill of lading, but is not signed by the owner or master of the boat. It was the acknowledgment given by Van Buren of his receipt of the corn from Griffin, to be transported to the city of New York, and there to be delivered to Griffin, and of the measure of his compensation. It was the only document Griffin received. It was indorsed and delivered by Griffin to White's bank as a symbol of the corn, while it was in transit, and by the bank to the plaintiffs. We are of the opinion that this instrument is such a symbol, the delivery of which, under the circumstances, was equivalent to an actual delivery of the corn, and that there was a sufficient delivery of the corn to the bank and to the plaintiffs. (*Gibson* agt. *Stevens*, 8 *How. U. S. R.* 384; *Bank of Rochester* agt. *Jones*, 4 *Comstock*, 497.)

The court upon the trial was asked to decide that the recovery in the action between the defendant as plaintiff and Wendt as defendant, was a bar to this action. The court refused, and the defendant excepted.

This precise question was decided in the supreme court in this district at general term, in May, 1856, in the suit of *Kimberly* agt. *Patchin*, according to the ruling at the special term. We feel ourselves bound by that decision, and refer to the elaborate opinion of Justice GREENE delivered on that occasion. The court also properly refused " to decide the taking and retaining of the corn by the defendant under the papers in the action brought by him, as aforesaid, did not subject him to this action " (*Shipman* agt. *Clark*, 4 *Denio*, 446).

Judgment must be entered upon the verdict.