## LINNEN *vs.* CRUGER.

Mere possession of goods will not give to the vendee of the possessor a title thereto, as against the true owner, even though such vendee be a *bona fide* purchaser without notice of the rights of the owner.

Where C., being the owner of brick, intrusted them to O. a common carrier, for transportation by water, who sold the same to L., a *bona fide* purchaser without notice of the rights of C., there being nothing in the case from which to infer a power of sale in O., in addition to his possession, except the fact that he was sometimes engaged in buying and selling brick on his own account, in connection with freighting, and that L. had frequently bought of him without making inquiries; *Held* that L. was not divested of his title.

It has never been held that the mere giving of possession of goods to one whose general and acknowledged business is not that of a sale of such goods, although he may incidentally be concerned in the purchase and sale of such goods, transfers to him the external *indicia* of the right of disposition. *Per* BARNARD, J.

APPEAL by the defendant from a judgment entered upon the verdict of a jury, at the circuit. The facts sufficiently appear in the opinion of the court.

BARNARD, J. This action was brought to recover the value of 29,000 brick, which it is alleged the defendant wrongfully took from the possession of the plaintiff. The brick in question were manufactured by Cruger, the defendant. They were put on board the sloop " Sparkler," whereof Olcott was captain but not the owner. Olcott was in the boating business, carrying brick, and was at this time also purchasing brick on his own account, besides freighting for others. The plaintiff had bought brick of Olcott for twenty years and never inquired whether he bought or stole them. Olcott sold the brick to Linnen, the plaintiff. The defendant sold a part to one Horn and a part to one Calrow, who carted away their respective portions. These matters are not disputed.

On the trial the plaintiff gave evidence tending to show that Cruger sold the brick in question to Olcott. The defendant, on the other hand, gave evidence tending to show that

he never sold the brick to Olcott, but on the contrary that being informed by Olcott that one Horn wanted a cargo of his brick, he merely freighted the brick in question to said Horn by the sloop " Sparkler," whereof Olcott was master. On their arrival at the city, Horn refused to take them, although he afterwards took some, and the defendant sold the balance to Calrow.

Notwithstanding this conflict in the evidence, the case must be disposed of on this appeal upon the assumption that the brick were not sold to Olcott, but were merely freighted by the sloop " Sparkler," whereof Olcott was master, to be delivered to Horn; because the disputed question was not submitted to the jury, but the case was put to the jury on the assumption that bare possession by Olcott was sufficient to give his vendee the title to the goods, provided the vendee purchased in good faith. without any collusion or fraud and without any reason to doubt the ownership of the party in possession.

The judge, in his charge to the jury, first charged them that Olcott (who was in the boating business carrying brick) was clothed with the possession of the brick and could make a valid sale of them to any one who purchased in good faith without any reason to believe that Cruger was at the time owner, or that Olcott was selling without any authority to do so. Afterwards he declined to charge as requested, that if Olcott was only a carrier of the brick, and Cruger did not sell the brick to Olcott, the title remained in Cruger, and Linnen acquired no title; but charged " that if the brick were put into Olcott's possession so that he had the power of sale, and so that a stranger would have no reason to believe that any other person had the ownership, if any one obtains them for a fair price, without any reason to doubt the ownership of the party in possession, he gets a good title." To these portions of the charge and the refusal to charge exceptions were taken.

It is evident that the case under this charge went to the jury on the assumption that bare possession by Olcott was

sufficient to give his vendee the title to the goods, provided the vendee purchased in good faith without any collusion or fraud and without any reason to doubt the ownership of the party in possession. This was error. Mere possession will not give the vendee of the possessor a title to the goods, as against the true owner, even though that vendee be a bona fide one without notice of the rights of the owner. This doctrine is expressly laid down in *Covill* v. *Hill*, (4 *Denio*, 323 ;) and is asserted in *Salter* v. *Everett*, (20 *Wend*. 267,) and in *Ely* v. *Ehle*, (3 *Comst*. 506.)

If it were otherwise, one who leaves his watch at a watchmaker's to be repaired, or keeps his horse at a livery stable, or who lends his watch or horse to another for a short period, would be liable to be divested of his property by a sale by the temporary possessor.

But assuming that the charge intended to submit to the jury the question whether Cruger had, in addition to placing the brick in the possession of Olcott, the master of the sloop, done such other acts (not amounting to a sale to Olcott, for that clearly was not submitted to the jury) as to invest him with a power of sale, still in that case the charge was erroneous as tending to charge the jury that such other acts were in evidence when they were not.

But if the charge in this aspect of it was not erroneous, then the verdict in this respect was against the evidence. There was nothing from which to infer such power of sale in Olcott in addition to his possession, except the fact that he was engaged in buying brick on his own account, and that the plaintiff had frequently bought of him without making inquiries. But it was also shown that Olcott's general business was that of master of a sloop engaged in the freighting business, and it did not appear that Cruger ever knew of his buying or selling brick on his own account.

It is true it has been held that if one intrust another with both the possession and the *indicia* of the right of disposition, then a sale by the possessor will vest the title in his bona fide

vendee without notice. And it has also been held that the putting property by the owner thereof in the possession of one whose general and acknowledged business is the sale of that kind of goods, such general business being known to the owner, is giving the external *indicia* of the right of disposition.

Without inquiring into the soundness of the last doctrine, it is sufficient to say that it has never been held that the mere giving of possession of goods to one whose general and acknowledged business is not that of a sale of such goods, although he may incidentally be concerned in the purchase and sale of such goods, transfers to him the external indicia of the right of disposition. So again it has never been held that if one carries on two distinct branches of business, e. g. repairing watches, for others, and buying and selling watches on his own account, an owner of goods who delivers them to him by reason of his carrying on one branch gives him the external indicia of the right of disposition by reason of his carrying on the other branch.

Take the familiar case of a miller, whose general business is the grinding of grain brought to him by others, but who almost invariably connects the purchase and grinding of grain and the selling of grain, flour &c. on his own account; do the owners of grain, by intrusting him with grain for the purpose of having it ground for them, give him the external indicia of the right of disposition, because he also buys and grinds grain and sells grain, flour, &c. on his own account?

In the case of *Covill* v. *Hill*, (4 *Denio*, 323,) Covill, the true owner of the goods, placed lumber in the possession of one Potter to be shipped by him to the defendants, to be sold by them on account of Covill. Potter through his son shipped the property on board of the canal boat Occidental, Banks captain, and delivered to Captain Banks a writing as follows: "Elmira, July 2, 1842. Shipped on board Occidental, H. Banks captain, 52,900 feet white pine boards for Albany. A. F. Potter." The son then drew on the defendants as follows: "Messrs. Hill & Sandford, please pay Capt. H. Banks,

boat Occidental, $4 per 1000 feet for lumber, deducting $100 advanced. B. A. Potter, per A. F. Potter." Captain Banks delivered the lumber to the defendants, and at the same time delivered to them the bill and draft. The defendants paid the balance of the freight, amounting to $109, and remitted to B. A. Potter their acceptance for $250 as an advance on the lumber. The $100 paid by A. F. Potter on the freight was the money of the defendants. B. A. Potter was largely indebted to the defendants, and they gave him credit for the lumber on such indebtedness. B. A. Potter was engaged in the lumber business and both manufactured and purchased lumber, and uniformly shipped lumber to be sold on his own account; and was in the habit of shipping lumber to the defendants to be sold on his own account, and the course of his business with the defendant was to ship lumber to them and make drafts on them on account of it. The court, on pages 327 and 328, distinctly hold that under the circumstances no title passed to the defendants, even though they were bona fide purchasers without notice. It is clear the court so decided, since after deciding against the defendants on this ground, the opinion proceeds to say that on another ground, viz. that as it did not appear that the defendants were purchasers from Potter, the defense must fall.

The external indicia of the right of disposition given by the true owner in the case at bar are certainly not stronger than those given by the true owner in the case of *Covill* v. *Hill.*

In conclusion it may be observed, that to uphold the verdict would be to enunciate the doctrine that if a common carrier is also engaged in the business of buying and selling some particular article, then an owner of that particular article who intrusts it to the carrier for transportation would be divested of his title in case the carrier should make a sale of the article to a bona fide vendee, without notice of the right of the owner.

New trial ordered; costs to abide the event.

SUTHERLAND, J. concurred.

LEONARD, J. My impression at the trial was that Cruger had authorized Olcott to sell the brick to Horn, and get the amount due him, and also his freight. That when Horn refused to purchase, Olcott might be considered as authorized to sell to another. There does not appear to be any evidence in the case, as here presented, to warrant the submission of the case in that aspect. Of course there must be a new trial.

New trial granted.

[NEW YORK GENERAL TERM, November 30, 1863. *Sutherland, Leonard* and *Barnard,* Justices.]