## BALLARD & SAMPSON *vs.* BURGETT.

Upon an agreement to sell property when the purchase money shall be paid, the title in the meantime to remain in the vendors, thr purchaser takes no title whatever, but merely a right to acquire it in future.

And if he, without having paid the purchase money, sells and delivers the prop- erty to a third person, the latter, although he buys in good faith and without notice of the claim of the original vendors, can not hold the property, as against them.

There is a marked and clear distinction between such a case and a *completed sale ;* and different rules of law apply.  *Per* DANIELS, J.

Possession alone is not sufficient to enable the person having it to transfer the title to personal property, by a sale even to a *bona fide* purchaser. .

The cases of *Steelyards* v. *Singer,* (2 *Hilton,* 96,) and *Wait* v. *Green,* (35 *Barb.* 585,) commented on, and disapproved.

THIS action was brought to recover the possession of per- sonal property claimed to be wrongfully detained from the plaintiffs by the defendant.   The referee before whom the cause was tried, found as facts, that the plaintiffs sold to

William France the oxen mentioned and described in the complaint, for the price of $180, and that it was agreed by and between the plaintiffs and him that the oxen were to remain the property of the plaintiffs until they should be paid for by said William France. And that, in April, 1866, France sold and delivered the oxen to the defendant, who purchased them without notice of the plaintiffs' claim to them. He also found that at that time France had not paid the plaintiffs for the oxen. As a conclusion of law, he decided that the plaintiffs were entitled to recover possession of the oxen, and directed judgment in their favor accordingly. From the judgment entered upon the report the defendant appealed.

*A. G. Rice,* for the appellant.

*W. P. Angel,* for the respondents.

*By the Court,* DANIELS, J. There is a very striking incongruity both in the finding of the facts by the referee and the statement of them in the case presented in this action. It arises upon the statement that the plaintiffs sold and delivered the oxen in controversy to William France, and that it was also agreed between them that the oxen should remain the plaintiffs' property until they were paid for. If they were sold and delivered, the title to them passed to the purchaser. But if the plaintiffs agreed to sell them only when the purchase price was paid, the title in the meantime remaining in them, the vendee took no title whatever, but merely a right to acquire it in future, when he paid the purchase money. (*Herring* v. *Hoppock,* 15 *N. Y. Rep.* 409. *Hasbrouck* v. *Lounsbury,* 20 *N. Y. Rep.* 598. *Bigelow* v. *Huntley,* 8 *Verm. R.* 151. *Smith* v. *Foster,* 18 *id.* 182.) The latter view of the transaction is the one which the referee probably intended to adopt, for it is the only one which has any color of consistency with the final disposition he made of the case.

If he had regarded the transaction as a sale and delivery of the property, there would have been no foundation whatever for a judgment against the defendant, for, in that view of it, he, as a *bona fide* purchaser, would have secured a good title to the oxen by his purchase from William France. But if it presented a mere executory contract for a sale when the purchase price should be paid, the title in the meantime by express agreement remaining in the plaintiffs, the conclusion of the referee that they were entitled to judgment would not be so entirely destitute of legal foundation. The presumption of law is in favor of the accuracy of judicial determinations, requiring errors to be established before they can be acted upon. And in conformity with that presumption, the referee must be deemed to have found and decided that the transaction proved before him exhibited an executory contract for a sale, and not a perfected sale, with the title remaining in the meantime in the plaintiffs.

Whether they can recover the property from the defendant, who was a *bona fide* purchaser under their vendee, with such a contract established in their favor, presents the real point in controversy in this case, and concerning that, considerable diversity of opinion exists in courts of justice. But most of the cases in which opinions have been produced adverse to the right of the plaintiffs to recover the property in dispute from the defendant, arose under contracts for completed or actual sales, and in them it was very properly held that a *bona fide* purchaser from the vendee in possession secured a title which was superior to the rights of the vendor under his lien for the unpaid purchase price; for the contracts proved contemplated present actual sales at the time they were made, by force of which the title to the articles affected passed at once to the vendees. From the time those contracts were completed, or the bargains were struck, the property became subject to the risk of the buyers, and if it were afterwards accidentally destroyed, the loss would fall upon them, and they would still remain liable for the price. The only interest

Ballard *v.* Burgett.

remaining in the vendor, after an actual sale has been made, is that of a right of possession until the payment of the purchase price, which in judgment of law is regarded as a mere lien. Under it he may retain the possession until the price is paid. But if a credit be given for the price, or the possession unconditionally delivered to the vendee, this right, or lien, is waived, and the vendor can no longer assert or maintain it, either against his immediate vendee, or those deriving title from him. But if the delivery be conditional that this right or lien shall continue in the vendor's favor until the purchase price of the property be paid, he may still resort to it for the purpose of securing payment, provided he does so with reasonable diligence and the property still remains in the vendee. The title which passed to the vendee by means of the sale, remains in him precisely the same after as it did before the delivery, and the rights of the vendor are the same in all respects, except that he has deprived himself of the actual possession. As to that, the vendee becomes his bailee, having in addition to the bailment the title to the property. If the vendee should fail to make payment, the vendor. by virtue of his continued lien, may not only resume the possession, but he is also empowered to divest the vendee's title, and rescind the sale completely and entirely, and if that be done, the vendee's title and interest in the property will be fully divested, and the vendor again become the actual owner of it. Whether the vendor will do so or not, depends entirely upon his own election. If he does not avail himself of that power, the title of the vendee will become absolute, and the lien of the vendor lost by lapse of time ; and to avoid the loss of that lien, the law requires that the vendor shall act with reasonable diligence. This right to vacate or annul the sale, depending upon the election of the vendor, will also be lost whenever a *bona fide* sale of the property may be made by his vendee. For having both the possession and the title, he may transfer them to a purchaser from him, provided the purchase is made in good faith, and for a valuable considera-

tion.   In such a case, the purchaser acquires the property discharged of the vendor's lien, because he trusted the vendee with the possession as well as the title.   And where one of two innocent persons must sustain a loss, the policy of the law is to impose it upon him whose conduct has occasioned it.   These principles affecting actual or completed sales of property are elementary in their character, and will be found to be well sustained by authority.   (2 *Black. Com.* 447.   2 *Kent's Com.* 7th ed. 634–6, 641, 642.   1 *Pars. on Contracts,* 440–1.   *Pars. on Mer. Law.* 44.   *Palmer* v. *Hand,* 13 *John.* 434.   *Russell* v. *Minor,* 22 *Wend.* 659, 664. *Joyce* v. *Adams,* 4 *Seld.* 291, 296.   *Olyphant* v. *Baker,* 5 *Denio,* 379. *Terry* v. *Wheeler,* 25 *N. Y. Rep.* 520, 525.)   The case of *Smith* v. *Lynes,* (1 *Seld.* 41,) arose upon a sale of that nature, where an innocent purchaser had bought a portion of the property delivered, and could only have been intended to settle the rights of the parties where they arose out of such a transaction.   And such was also the case of *Western Trans. Co.* v. *Marshall,* (37 *Barb.* 509.)   The same princi- ple has been often applied in the same way to the protection of the rights of an innocent purchaser of personal property under a fraudulent vendee.   There the vendor retains the right of disaffirming the sale of his property in case he elects to do so whenever he discovers the fraud.   But if before that discovery or election the property should be sold to an inno- cent purchaser for value, the innocent vendee will be protected; for by the original sale, although fraudulently procured, the title and the possession for the time being passed to the fraudulent vendee.   (*Lacker* v. *Rhoades,* 45 *Barb.* 499.)

But the present controversy does not arise out of a sale of personal property, and it is not, therefore, governed by the law of sales, or the doctrine of the cases already cited.   There is a very marked and clear distinction between it and a com- pleted sale.   For here, instead of the title to the property passing to the vendee, it remained in the vendors.   All that the vendee acquired by the contract was the possession, and

the right to acquire the title at a future time by payment of the purchase money agreed upon. He could not, therefore, confer a title upon a person purchasing from him, for he had none whatever to transfer. In this respect the case is entirely different from those already considered, where an actual sale was made, and the title completely changed, subject only to the vendor's right to divest it on account of non-payment of the purchase price. There the vendee had the possession and title, by means of which he might well deceive others dealing with him. But here he had the possession alone, which it is well settled was not sufficient to enable him to transfer the title by a sale even to a *bona fide* purchaser. (*Linnen* v. *Cruger*, 40 *Barb.* 633.) The rule is well established, that a sale by a person on whom the owner has neither conferred the title, nor the evidence of title, to personal property, will transfer to the purchaser no greater right than he himself has. It arises out of the fundamental principle that no one shall be deprived of his property without his expressed or implied consent. (*Saltus* v. *Everett*, 20 *Wend.* 268. *Covill* v. *Hill*, 4 *Denio*, 323. 2 *Seld.* 375. *Brower* v. *Peabody*, 3 *Kern.* 121. *Williams* v. *Merle*, 11 *Wend.* 80.) If possession alone were sufficient to enable the person having it to transfer the title to personal property, no good reason could be given for denying it to lessees, bailees, and others who might happen to be in possession by the consent of the actual owner, which would render the title to that species of property of the most frail and unreliable character imaginable. That the person having possession of personal property, under a contract like that proved in this action, can not transfer title to it, by a sale to an innocent vendee, would seem to follow directly from the principle maintained by these authorities. But in addition to them, that conclusion was unequivocally declared in the case of *Dow* v. *Hall* by the general term in this district, which was decided in February, 1865. That was a case in which the plaintiff had made a contract, like the one in the present case, for the sale of a quantity of

Ballard *v*. Burgett.

wheat when the price agreed upon should be paid.   But in the mean time the title was to remain in the seller.   The wheat was delivered and laden on board a canal boat for transportation to the city of New York, the bill of lading being taken in the name of the vendee as the shipper.   In that case it was held that a bank advancing money on the shipment, under such circumstances as entitled it to the protection afforded by law to *bona fide* purchasers, for which it received an assignment of the bill of lading, could not hold the property, as against the vendor's rights under that executory contract for the sale of it.   The same ruling was made, upon a similar contract, against a *bona fide* purchaser claiming the property under the vendee, in the cases of *Sargant* v. *Giles* (8 *New Hamp.* 325,) and *Copland* v. *Boquet*, (4 *Wash. Circuit Court Cases*, 594.)   And it was held to be the law by the Superior Court of Buffalo, in the case of *Rawls* v. *Deshler*, (28 *How. Pr.* 66.)

The only cases opposed to this view of the law are those of *Steelyards* v. *Singer*, (2 *Hilton*, 96,) and *Wait* v. *Green*, (35 *Barb.* 585,) which seem to proceed upon the authority of the cases arising upon actual sales, where the vendee was entrusted with the possession, upon the condition that the vendor's lien for the purchase price should not be waived by the delivery.   Those cases do not warrant the conclusions predicated upon them by the learned judges who delivered the opinions in *Steelyards* v. *Singer*, and *Wait* v. *Green*, on account of the distinction existing between the contracts on which they were pronounced, and the contracts before the courts where these decisions were made.   In view of the great weight of authority against them, they can not be regarded as accurate expositions of law upon the subject now under consideration.   On the contrary, the settled current and analogies of the law are against the right of the defendant to withhold the property in suit from the plaintiffs, who are the real owners of it.   And the judgment should be affirmed.

[ERIE GENERAL TERM, November 19, 1866. *Grover, Marvin* and *Daniels*, Justices.]