CAIRNES & LORD *against* B. & J. BLEECKER.

*It seems; that where an agent is authorized to deliver goods to a third person, on receiving sufficient security for the amount, and the agent delivers the goods, but does not take sufficient security, trover will not lie against the agent for the goods; but the proper remedy is an action on the case. But where an agent, on the 18th July, informed his principal, by letter, of what he had done, and the nature and amount of the security he had received on the delivery of the goods, and the principal did not answer the letter until the 29th October following, this was held to amount to an acquiescence, in or approbation of the agent's conduct.*

*Where a principal is informed by his agent of what he has done, the principal must express his dissatisfaction, in a reasonable time, otherwise, his assent to his agent's acts will be presumed.*

THIS was an action of *trover*, tried at the *New-York* sittings, before Mr. Justice *Van Ness*, the 5th *April* last.

The plaintiffs produced in evidence the following receipt of the defendants: " Received in store, *Albany*, 18th *May*, 1811, from on board the sloop *Diana*, *John Gager*, one box, and one bale of dry goods, marked *M. Gillet*, subject to the order of Messrs. *Cairnes* & *Lord, New-York*. B. & J. R. *Bleecker.*" The value of the goods, in *May*, 1811, was admitted to be seven hundred and ninety-five dollars and thirty-two cents.

On the 20th *May*, 1811, the defendants wrote to the plaintiffs, as follows: " Captain *John Gager* has put into store a box and small bale of goods, marked *M. Gillet*, for which we have given him a receipt, as holding them subject to your order. Mr. *Gillet* has drawn on us, in your favour, for the amount of goods said to be contained therein ; but, not being authorized by you so to do, we have not accepted them, but shall retain the goods, to be disposed of as you may direct. It is by the desire of Mr. *Gillet* we have written to you on this subject ; and, also, to inform you of his wish to have the goods left in our hands, until he shall make you remittances in ashes, to an amount to make you feel satisfied to let him take them. We believe he has written himself, in regard to the business, and we shall wait your instructions how to act."

On the 22d of *May*, the plaintiffs wrote to the defendants, stating the sale of the goods to *Gillet*, for drafts on the defendants, which *Gillet* informed them had not been accepted, but that the goods remained in the hands of the defendants, subject to the order of the plaintiffs ; and that he should, on his return home, immediately place in the hands of the defendants a quantity of pot-ashes, as security for the claim of the plaintiffs ; and they add, in their letter, " believing Mr. *Gillet's* intentions were correct, and that his disappointment would be great, we have to request you to receive, agreeable to Mr. *Gillet's* proposition, property amply sufficient to secure our claim, which

you will dispose of and pay over to us, when sold, the amount of the drafts before mentioned; and as soon as property is placed in your hands, agreeable to the conditions above, you will please deliver the goods. Please to write us, if the satisfactory security is received." On the 18th *July*, 1811, the plaintiffs again wrote to the defendants, mentioning their last letter, and say, "Please inform us whether the security is received, and the goods delivered, by the first convenient opportunity."

On the 18th *July*, the defendants wrote to the plaintiffs as follows: "Mr. *Gillet*, sometime last week, wrote us that he would, in a few weeks, send about seven tons of ashes, which we could (if we thought proper) ship to *New-York*, to be delivered to you, subject to his order. We have now put on board the sloop *Cornelia*, captain *Staats*, twenty-six casks of ashes, which we have directed him to send to an inspector's store, and deliver the bills to you, which you will have the goodness to receipt for, subject to Mr. *Gillet's* direction. It is probable, at the next trip of the sloop, we may have more to ship you for Mr. *Gillet.* We send these now, in case he should require them to be shipped before the sloop goes down again, say the next month. You will, of course, not dispose of the ashes until you receive Mr. *Gillet's* orders."—"P. S. We sen t the last package of your goods, yesterday, to Mr. *Gillet*."

In a letter of the plaintiffs' to the defendants, dated the 29th *October*, 1811, they say: "Be pleased to inform us, if any directions have been given you relative to the ashes held by us, for account of Mr. *Martin Gillet;* and, also, what other property he placed in your hands, when he took the last of the goods." They also state, that if the ashes they had received were then sold, at the then prices, they would fall far short of their demand. On the 1st *November*, the defendants, in answer, wrote to the plaintiffs that they had received no communication from Mr. *Gillet* since the summer months; that they had been informed that Mr. *Gillet* had gone to *Baltimore;* that no more ashes, or other property, had been left by him with them; and they promise to make further inquiries as to the circumstances, &c. of Mr. *Gillet*, and inform the plaintiffs. On the 12th *February*, 1812, the plaintiffs' attorney wrote to the defendants, informing them, that the plaintiffs held them responsible for the value of the goods left in their hands; that ashes would then sell to advantage, and suggesting, for their consideration, the

propriety of giving orders to the plaintiffs to sell the ashes, and appropriate the proceeds towards the payment of their claim on the defendants. This letter was not answered by the defendants, and, on the 3d of *August,* 1812, a formal demand was made, on behalf of the plaintiffs, on the defendants, for the goods placed in their hands, and which they refused to deliver.

The receipt of the plaintiffs to the defendants, for the ashes, was dated the 27th of *July,* 1811, for "twenty-six barrels of pot-ashes, and one barrel of caustic, as per bill of *J. H. Bogert,* which are held by us for account of *M. Gillet.*" The ashes remained in the store of *Bogert,* the inspector, until *December,* 1813, when he sold them, according to the directions of the statute, and paid the proceeds into the hands of the state treasurer.

A witness for the defendants, a clerk in their store, testified, that the captain of the sloop who brought the goods for *Gillet,* offered to deliver them to the defendants, on their accepting two drafts drawn on them by *Gillet,* each for three hundred and ninety-seven dollars and sixty-six cents, one at four months, and the other at eight months, which the defendants refused to accept; but observed, that they had some ashes of *Gillet's* in store, and that they would receive the goods on storage, and retain them until they should receive sufficient ashes from him to pay the amount of the drafts, for which they would not make themselves liable. The goods were then delivered to the defendants, who gave the receipt for them above mentioned. The witness stated, that *Gillet* made frequent applications to the defendants for the goods, but they refused to deliver them, until they had received a sufficient quantity of ashes to secure the amount of the drafts; and that, on the 18th of *July,* 1811, having received a sufficient quantity of ashes to secure the amount, they delivered the goods to *Gillet,* and sent the ashes to the plaintiffs.

It appeared that the price of ashes in *New-York,* in *July* and *August,* 1811, was ninety-five dollars per ton; and in *October* and *November,* of the same year, eighty dollars per ton. The amount for which they were sold by the inspector, was five hundred and eighty-three dollars and forty-two cents.

A verdict was taken for the plaintiffs, for nine hundred and eighty-nine dollars and twenty-three cents, subject to the opinion of the court, on the case above stated.

*Slosson*, for the plaintiffs. The goods of the plaintiffs were deposited with the defendants, to be delivered to Mr. *Gillet*, only on the condition that the defendants received ample security ; and of the adequacy of that security, they alone were to be the judges. They were bound, by the tenor and effect of their engagement, to take for the plaintiffs, adequate and unconditional security. Under a perfect understanding, however, and full knowledge of all the circumstances, they took security, insufficient in itself, and clogged with the condition of being subject to the order of *Gillet*. The defendants, in their letter, did not pretend that the potashes they sent were sufficient security ; yet, they delivered the goods to *Gillet*, which had been deposited with them.

ALBANY,
August, 1815.

CAIRNES & LORD
v.
BLEECKER.

By the delivery of the goods to *G.*, in violation of the terms of the deposite, the defendants must be considered as having converted them to their own use; and after a demand and refusal to deliver them to the plaintiffs, there can be no question that the action of *trover* lies. The case of *Syed* v. *Hay*,* in *England*, and of *Laplace* v. *Aupoiv*,† and *Bristol* v. *Burt*,‡ in this court, show the principles of this action, and that it will lie in such a case.

* *Term Rep.* 260.
† *Johns. Cas.* 406.
‡ 7 *Johns. Rep.* 257.

But it may be said, perhaps, that the plaintiffs have acquiesced in, or adopted, the acts of the defendants, their agents or bailees. But there can be no adoption, unless there has been a full and perfect disclosure of the facts. If there be a concealment of facts, the principal cannot be bound by any supposed adoption.§ Now, the defendants did misrepresent facts; we do not say, wilfully, or intentionally ; but if there was any erroneous statement, or concealment, which might mislead the judgment of the plaintiffs, they cannot be held to have adopted the conduct of the defendants. In their letter of the 18th of *July*, the defendants did explicitly hold out to the plaintiffs the expectation that more ashes were to be shipped to them, and that the twenty-six barrels were not the whole of the security they were to receive. That expectation, however, was never realized.

§ *Wallace*, v. *Tellfair*, 2 *Term Rep.* 188. Note. *Codwise* v. *Hacker*, 1 *Caines' Rep.* 526. 539. 1 *Vesey*, 509.

*Brinckerhoff and Wells*, contra. The agency of the defendants was gratuitous. The bailment to them was a naked bailment; and it is merely a question as to *good faith* on their part. Has the agent honestly, and in good faith, exercised the power vested in him by his principal? The plaintiffs gave to the defendants a discretion in the exercise of their judgment, as to the

sufficiency of the security to be received on the delivery of the goods to *Gillet*. If the defendants have exercised their judgment honestly and fairly, they ought not to be made answerable, if that security has proved deficient.

On the 18th of *July*, they wrote to the plaintiffs, and informed them of what they had done. If the plaintiffs were dissatisfied with their conduct, they ought immediately to have expressed their disapprobation, so as to put the defendants on their guard, and to give them an opportunity of securing themselves, through *Gillet*, in case they had made themselves responsible to the plaintiffs. Considering the circumstances under which the defendants accepted of the agency, it was peculiarly the duty of the plaintiffs to have instantly answered the letter of the defendants, and expressed their opinion of their conduct. On the contrary, they continued silent until the 29th of *October*, which, we contend, amounts to an assent to their acts. It is a general principle of law,(a) and which has been recognised by this court,* that where an agent, by letter, gives an account of what he has done, and that letter is not answered by the principal, it amounts to an approbation of the conduct of the agent.

But we contend that *trover* does not lie in this case. The goods were delivered to the defendants, with directions to deliver them over to *Gillet*, on receiving satisfactory security. The defendants having received security which they believed sufficient, and delivered over the goods, the property of the plaintiffs immediately ceased. Their only remedy, therefore, if any, must be an action on the case against the defendants, as their agents, for exceeding their authority. In such an action, the defendants, if they have not acted *bona fide*, would be liable only to the damages actually sustained by the plaintiffs. But in *trover* they must answer for the value of the goods.

SPENCER, J., delivered the opinion of the court.

Two objections have been made to the plaintiffs' recovery: 1st. That trover cannot be sustained in such a case; and, 2d.

*\* Towle and another v. Stevenson, 1 Johns. Cas. 110. Codwise v. Hacker, 1 Caines' Rep. 526. Armstrong & Barnewall, v. Gilchrist, 2 Johns. Cases, 431. Per Kent, J.*

(a) Le mandant qui ne répond point à la lettre par laquelle ses commissionaires lui expliquent ce qu'ils ont fait, est censé approuver leur conduite, quoiqu'ils ayent excédé le mandat. Cette reception de la lettre non contredite, est, parmi les negocians, un acte *positif* d'approbation. *Emerig.* tom. 1. p. 145. *Receptio litterarum est actus positivus. Straccha de Assec.* gl. 11. n. 47. *Casaregis disc.* 30. n. 63. *disc.* 102. n. 54. *disc.* 131. n. 7. *disc.* 325. n. 64. *Rot de Genes deo.* 24. n. 4. *decis.* 147. n. 4.

That the plaintiffs, after a knowledge of all the facts, adopted the defendants' acts.

The plaintiffs' counsel relies on the case of *Seyd* v. *Hay*, (4 *T. R.* 260.) as to the form of the action. In that case, the owner of goods on board of a vessel directed the captain not to land them on the wharf, which he promised not to do, but afterwards delivered them to the wharfinger, for the owner's use, under the pretence that the wharfinger had a lien on them for wharfage; the court held the delivery to be a conversion, there being no right to wharfage. The case of *Duhesne* v. *Hutchinson*, (3 *Taunt. Rep.* 117.) decides, that if a broker, authorized to sell goods for a particular price, sells them at an inferior price, he is not liable in trover, and that the proper remedy is an action on the case. The court do not think it necessary to decide this point on the present occasion, nor do they intend to do so. It appears to me, however, that there is serious objection to the form of the action, without impugning the case of *Seyd* v. *Hay:* in that case the defendant was guilty of a direct breach of orders, contrary, too, to his promise; here, the defendants were authorized to deliver the goods to *Gillet*, on receiving property amply sufficient to secure the plaintiffs their demand: this necessarily referred it to their judgment, what was sufficient property; and for misbehaving in this trust, it seems to me that case, and not trover, is the appropriate remedy. At all events, the form of action ought not to deprive the defendants of any ground of defence.

On the 18th of *July*, 1811, the defendants informed the plaintiffs, that they had, on the 17th of that month, delivered *Gillet* the last parcel of the goods, and that they had received from him 26 casks of ashes, which were placed, at the same time, under the plaintiffs' control, subject to *Gillet's* order as to their sale. The plaintiffs rest satisfied until the 29th of *October*, and then, for the first time, ask for information, what other property *Gillet* had placed in their hands when he took the last of the goods. The cases of *Codwise* v. *Hacker*, (1 *Caines' Rep.* 539.) and *Towle & Jackson* v *Stevenson*, (1 *Johns. Cases*, 110.) are authority for saying, that when a principal, with a knowledge of all the facts, adopts the acts of his agent, though these acts are contrary to his duty and his instructions, he shall not afterwards impeach his conduct; and this principle is peculiarly applicable to a case like the present; for had the principal disap-

proved, the defendants might, by their vigilance, for aught we know, have secured themselves. The lapse of time after the information that the last parcel had been delivered, and that only 26 barrels of ashes had been deposited, was sufficient to denote to the defendants the plaintiffs' approbation of, or acquiescence in, what they had done; and besides, the defendants had a right to infer, that *Gillet* had communicated to the plaintiffs his orders as to the disposition of the ashes, and made arrangements with them as to the debt. It is a salutary rule, in relation to agencies, that when the principal is informed of what has been done, he must dissent, and give notice in a reasonable time, or, otherwise, his assent to what has been done shall be presumed.

Judgment for defendants.