CALVIN L. ROBINSON, APPELLANT, vs. THEODORE HARTRIDGE APPELLEE.

1. Bill of exceptions must be made up and signed during the term, under the rules of practice in the Circuit Courts, in all cases except where, by special order, further time is allowed. Where the judge, in signing the bill of exceptions, certifies that the bill is made up and tendered for signature after the term, by his special leave and authority, it is presumed that special leave was granted during the term by an order of the court.

2. An appellate court will not review any action of the inferior court involving a consideration of the whole testimony, unless the whole of evidence is before the reviewing court; but it is not necessary t<sup></sup> bill of exceptions should, in precise words, state that all of the test introduced is embodied in it. Where the bill purports to cont... evidence which " the plaintiff gave in his behalf," and the evidence "given in behalf of the defendant," reciting after this statement the evidence offered, it is sufficient.

3. Where it appears from the record that an objection was noted to interrogatories, to be propounded to a witness to be examined upon commission, and the record is entirely silent as to any disposition made of these objections by the court, and the bill contains the answers of the witness, the presumption is that the party making the objection abandoned it, and that the deposition was read.

4. Under the statutes of this State, a total variance between the writ and declaration is no ground after verdict for an arrest of judgment in the court below, nor for a reversal of the judgment in this court.

5. Under the rules of practice in the Circuit Courts, the plea of not guilty in trover does not put in issue the plaintiff's title to the goods. Under this plea, defendant cannot introduce evidence in denial of all property or right of possession in the plaintiff. None of the statutes of this State have changed this rule.

6. The act to amend the pleading and practice of this State adopts certain forms for particular pleas, and enacts that the forms set forth shall be sufficient. The effect of the statute is to render the brief forms sufficient for all the purposes for which the more lengthy forms were required before the act; but the effect and operation of the plea is not extended beyond its effect anterior to the statute.

7. The unauthorized sale of the property of another is a conversion; that the true owner is unknown; that the party making the sale believed that it was a consignment to him for sale, and that he retained the proceeds, subject to the order of the true owner, when discovered, is no justification for the unauthorized exercise of the acts of ownership involved in the sale, and does not cure the conversion.

8. If in such a case the act of sale is confirmed or consented to by the owner, and he afterwards objects to receiving the proceeds because the sale did not realize what he deemed the full value, he cannot recover in trover. If the sale was authorized and was fair, and there was no breach of duty, the form of action is assumpsit for the proceeds, and if there is a breach of duty in the act of sale, the form of action is a special action on the case.

9. When a party receives chattels from a carrier, under the belief that he has a general or special property in them, and ships them to a distant

market in the name of a third party, but for his own benefit, such act is a converson if he has no such general or special property and the act of shipment is unauthorized, or not ratified or agreed to by the true owner.

10. In trover, a demand and refusal establishes a conversion in no case where the defendant has not the possession of the property at the time of demand made.

11. The general rule, as to damages in trover, is the value at the time and place of conversion, with legal interest to the date of the verdict.

12. Defendant's counsel, misapprehending the effect of the plea of the general issue in trover, attempts to introduce, after the plaintiff ha[s] closed his testimony, evidence in denial of the plaintiff's title; it is objected to, and the objection is sustained; the defendant asks leave to file a special plea, putting the title in issue: *Held*, under the statutes of this State, that the application to cure the defect is duly made, and if the question of title is involved in the determination of the true questions in controversy between the parties anterior to the trial, it is such an amendment as is authorized by statute, and made the duty of the court to allow.

This is an appeal from a judgment redered in the Circuit Court for Duval county in an action of trover, instituted by Hartridge against Robinson, to recover damages for the conversion of four bales of cotton.

The case is stated in the opinion of the court.

*H. Bisbee, Jr.*, for Appellant.

*J. P. Sanderson* for Appellee.

WESTCOTT, J., delivered the opinion of the court.

There are several objections made to the bill of exceptions in this case. It is objected that the bill was filed after the term. The eighth rule of practice of the Circuit Courts requires that "bills of exception shall be made up and signed during the term of the court, unless, by special order, further time is allowed." It is stated in the record by the Judge, under his hand and seal, that the bill of exceptions in this case was made up and tendered for his signature after the term by his special leave and authority. That special leave

could have been granted in no other way except by the order of the court during the term, and that such order was made, is the only conclusion consistent with this statement of the judge.

The bill having been made up after the term, as a matter of course, it could not be filed before the expiration of the term.

One of the errors assigned in this court is the refusal to grant a motion for new trial, to determine which involved a consideration of all of the evidence adduced upon the trial, and it is insisted that such action of the court cannot be reviewed here unless it appears that the bill of exceptions contains all of the evidence introduced, and that in this case it does not appear that all of the testimony introduced is contained in the bill, because it does not expressly state this fact.

Whenever this court is to review any action of the court below which involved a consideration of all of the testimony, it is plain that we cannot act intelligently unless all of the testimony is before us; and in this case, where we are called upon to review an order of the court refusing a new trial, which was requested upon the ground that the verdict was contrary to the evidence, we cannot review the action of the court in overruling the motion unless the entire evidence is before us.

While we agree with the appellee to this extent, we cannot coincide with the view that the bill must contain *an express statement* that it embodies all of the testimony. The usual rule in those courts where the refusal to grant a new trial is not a matter of exception, but is the exercise of a discretion which an appellate tribunal will not control, is that the bill should contain all of the testimony applicable to the precise question of law raised in reference to it, and no more. It is just as essential to have *all* of the testimony *applicable* to a point raised which involves a consideration of a part only of the testimony, as it is to have the entire tes-

timony when the point raised involves a consideration of the whole, and yet none of the forms of a bill of exceptions given in the accepted works upon practice have an express statement that the bill contains *all* of the testimony upon the particular point. Arch. Forms, 122 ; Tidd's Ap., 206 ; Bull. N. P. 317 ; 2 Hen. Black., 288 ; 3 Burr, 1746, 1692. They contain a simple statement that the party, ." to maintain and prove the issue on his part, gave in evidence that," &c., or something to the like effect. In this case the bill purports to contain the evidence which " the plaintiff gave in in his behalf," as well as the evidence given " in behalf of the defendant," and that is deemed sufficient.

We cannot presume that the judge would sign a bill which, in contemplation of law, purports to contain the evidence used at the trial, when the contrary is the fact. The precise question was raised in Jordan, administrator, vs. Adams, 2 Eng., 348, where the court remarks : " It is not necessary that the bill should avouch in exact words that this was all of the testimony in the case." It is sufficient if it appear from the language that the whole evidence is given.

We have examined with care the citation of appellee to this point, and find but one which is in conflict with this view. In this case (5 Mo., 112,) the head note states the rule correctly, while in the body of the opinion the court remarks that, for want of the fact being stated in the bill of exceptions that all the evidence given is in the bill, it will not examine the motion for new trial. This case was of small importance, being an appeal from a justice's court. The precise question was not argued by counsel. It does not appear to have received accurate consideration by the court. The precise form of the bill is not disclosed in the case as reported. It is in conflict with well considered decisions, as well as with the practice in the English courts.

The next objection arises thus : The plaintiff in this cause

obtained a commission for the examination of W. H. Brodie, one of his witnesses, residing beyond the State. Upon crossing the direct interrogatories, defendant objected to certain of them upon the ground of irrelevancy, reserving the objection in the usual way.

Following the commission and interrogatories came the answers of the witness to the interrogatories. It is insisted that there is nothing in the record to show whether these objections were sustained or overruled; that it is, therefore, in doubt whether this entire deposition was read at the trial, and that when such a doubt exists, this court will not review matters involving a consideration of all of the testimony.

The case of Proctor vs. Hart, 5 Fla., 470, is cited to this point, and the statement of the justice delivering the opinion in that case is to that effect. An examination of that case will show that before making this statement, the court had decided the case upon the express ground that there was no bill of exceptions in the record. Having decided that there was no bill, the opening of what purported to be a bill and this statement was entirely unnecessary to the decision of the case.

Independent of this, the remark is one we cannot sanction. Where an objection is stated, and it does not appear that it was insisted upon by the party urging it, or that the court decided the point raised by it, the presumption is that it was abandoned. It is the business of the party making the objection to call it up for decision at the proper time, and if he neglects so to do, the other party is not to be prejudiced by such neglect. It is certainly no part of his duty to see that an objection made by his adversary is passed upon, nor is it the duty of the court, nor is it the practice for the court to call up such matters. The failure to act by the party making the objection is an abandonment of it, and when, as in this case, such an objection appears undetermined, and at the same time the answers of the witness to all of the interrogatories are in a bill of exceptions, which purport to con-

tain what was read in evidence, the presumption is that they were read. In cases where the appellee has made such objections and abandoned them, the result would follow that the appellant, for no fault of his, (for it does not devolve upon him to call up for consideration his adversary's objections,) would be denied the right of having reviewed in this ·court the orders of the inferior court involving a consideration of the entire testimony. Where from the bill it appears that a witness is being examined, or it is proposed to put a paper in evidence and an objection is made, but it does not appear that it was urged, and the answer of the witness or the paper is set out in the bill, the presumption is that it went to the jury. Any other conclusion is inconsistent with the fact that the answer is in the bill, and discredits the act of the judge in signing the bill. A simple objection amounts to nothing in this court. A ruling must be had upon the point raised by it, and an exception must be noted to such ruling. 4 Wall., 602. In some States the objection will not be considered by the appellate tribunal, unless the ground upon which it is made is distinctly stated in the bill. We do not think that such a remark would have been made had the able justice delivering the opinion in the case referred to given it a moment's consideration, and we regard it as a casual remark, induced by the confused state of the record in the case then being considered.

A further and the last objection urged to the bill is, that " it appears that the judge has only signed three of the exceptions " taken during the trial. The judge's signature and seal purports to be attached to the " foregoing bill of exceptions," and looking to the record, we find a bill commencing with the issue purporting to contain all the evidence, as well as the three exceptions alluded to.

Having disposed of these objections, we reach the errors assigned in this case. The first is, that the court erred in giving judgment upon the verdict of the jury, the declara-

tion being in trover and the writ in assumpsit, and that the declaration is defective for want of material allegations.

The defendant in the court below, without making any objection to this total variance between the writ and declaration, pleads to the changed form of action, goes to trial, and this objection is made for the first time in this court. The objection comes too late. Under strict rules of pleading, independent of the statute of this State, the judgment would have been arrested upon this ground, (3 Black, 393; Gould's Pl., 461;) but under the first and second sections of the act of 1861, entitled an act to amend the pleading and practice in the courts of this State, it is not necessary to mention any form of action in the summons, and if one form is substituted for another, it is no objection to any proceeding in the action, and the writ may be amended upon an *ex-parte* application without costs. Under the provisions of the act of November 23, 1828, (Thomp. Dig., 351,) " after verdict, the judgment cannot be stayed or reversed " for this variance. It is thus seen that this variance amounts to but little when urged in the Circuit Court before verdict, and amounts to nothing when urged after verdict, and that it is no ground for a reversal of the judgment by this court.

The other objection embraced in this assignment is, that the declaration is defective for want of material allegations. The declaration is sufficiently certain in the description of the property, in the statement of the value, and in all respects it is much more definite and particular than the form prescribed by the act regulating the practice and pleading in this State.

The second error assigned is, that " the court erred in rejecting evidence of title to the property in question in a stranger, the court holding that a special plea of title in a stranger was essential to admit said evidence." The only plea filed here was the plea of not guilty, and under this plea the evidence stated above was proposed to be introduced.

Under the rules governing the practice of the Circuit Courts, the plea of not guilty in actions on the case operates as a denial only of the breach of duty or wrongful act alleged to have been committed by the defendant, and not of the facts stated in the inducement, and no other defence than such denial shall be admitted under that plea. All other pleas in denial shall take issue on some particular matter of fact alleged in the declaration. As an illustration of the operation of this rule, it is stated that " in an action for converting the plaintiff's goods, the plea will operate as a denial of the conversion only, and not of the plaintiff's title to the goods." In this case the evidence proposed to be introduced was in denial of any property or right of possession in the plaintiff, and to prove the sole property or right of possession in some one other than the plaintiff. This rule is a copy of the rule adopted in England at Hilary term of 4 William 4, controlling and fixing the operation and effect of the plea of not guilty (the general issue) in actions of this character. The rule has repeatedly received construction in the English courts, and their decisions are that the defendant cannot, under the plea of not guilty in trover, avail himself of the defence which the defendant sought to make available in this case. In 2 Meeson & Welsby, 8, the court of exchequer held that in trover, under the new rules, the plaintiff is entitled to a verdict on the plea of not guilty, if on the trial a conversion in fact be proved, although it appear from the evidence that at the time of such conversion the plaintiff had parted with his property in the goods. In 5 Meeson & Welsby, 296, the court held that under the plea of not guilty in trover the defendant could not set up an absolute property in himself in the chattel by sale from the plaintiff, although the evidence of a conversion was a demand and refusal. See also 2 Crompton, Meeson & Roscoe, 1; 6 Exchequer, 257; 6 Eng. Law and Eq., 566.

It is, however, insisted that the 22d, 23d, 30th, 31st and 38th sections of the act to amend the pleading and prac-

tice in this State, which was passed subsequent to the adoption of the rules, changes this rule, and that the title to the goods is put in issue under the plea of not guilty by virtue of the provisions of this act. This question is raised, and we propose to examine it very briefly. Indeed, upon the very face of most of the sections, their entire inapplicability is patent.

Section 22 provides that express color shall be no longer necessary in any pleading. What this has to do with the effect of the plea of the general issue in trover is not perceived, nor do we see any, even the most remote application to anything in this case. There was no objection on the part of the plaintiff to the plea of the general issue in this case because it did not give express color; such an objection would have been absurd. It would be a new idea that in the plea of the general issue, either express or implied color has any place. One is applicable to a special plea in trespass, by which, as a question of law, the defendant's title is referred to the court; the other is an incident of all pleas in confession and avoidance, and neither express nor implied color appertains in any case to a plea of the general issue, which is in legal effect a negation of all that is material in the declaration, except in cases where its effect is restricted by the rules of court, as for instance the plea of the general issue, where the form of action is in case for trover.

Section 23 provides that special traverses shall not be necessary in any pleading. It was insisted that this section abolished special pleas, and hence the defence was available under the general issue. A special traverse is but one form of a special plea, and the abolition of that form does not abolish other special pleas which are not special traverses. The court below did not require the defendant to plead in the form of a special traverse, nor did it determine that a special traverse was necessary in any pleading. Hence there is nothing in the action of the court to which this section re-

Robinson vs. Hartridge—Opinion of Court.

fers, and it certainly has nothing to do with the question in connection with which it has been called to our attention.

We simply remark, with respect to section 30, that the defendant in this case has not been denied the right of traversing generally such facts in the declaration as he might have denied by one plea, nor do we see that he has been denied the privilege of selecting and traversing separately any material allegation in the declaration, although it might have been included in a general traverse. These are the rights which this section gives. They have not been denied in this case. Indeed, the section has not the most remote reference to anything in it.

Section 31 regulates traverses of the pleadings of the *defendant* by the *plaintiff*. In this case the plaintiff simply added the similiter to the defendant's plea of the general issue. The similiter is in no sense a traverse, and hence it is not perceived how this section of the act has any reference to the case, and certainly no connection with the point which it was read to sustain.

Section 38 is as follows : " That the forms contained in the schedule to this act annexed shall be sufficient, and those and the like forms may be used with such modifications as may be necessary to meet the facts of the case ; but nothing herein contained shall render it erroneous or irregular to depart from the letter of such forms so long as the substance is expressed without prolixity."

One of the forms of pleas for wrongs, independent of contract, contained in the schedule is the general issue, and the other three forms are of pleas by way of confession and avoidance—the first being a plea of " leave and license," the second of " self-defence," and the third of a " right of way." It is insisted that by virtue of this section, and of the fact that a form of the plea of the general issue appears in the schedule, that the plea of the general issue is sufficient to let in the defence of a want of title in the plaintiff to the goods involved in this action. The effect of the section is

to render the form there prescribed, which is brief and simple, sufficient without resort to the lengthy form in which this plea must have been if framed according to the forms prescribed anterior to the act. It could as well be contended that under the plea of "leave and license," which is one of the forms declared "sufficient," a defendant could deny the act committed, which his plea confesses but proposes to avoid, (which is absurd,) as to contend that under the plea of the general issue in this cause the plaintiff's title or right to possession of the goods could be denied. The brief forms of pleas adopted are sufficient for all the purposes for which the more lengthy and verbose forms were required anterior to the act, but the effect and operation of the plea is not extended beyond its effect anterior to the statute.

The fourth error assigned is that the Circuit Court erred in denying the motion of defendant for a new trial. We deem it necessary to review but two of the grounds upon which this motion was urged in the court below:

First—That the verdict was contrary to the law.

Second—That if acts of ownership amounting to a conversion were proved, they were assented to and ratified by plaintiff.

It will be seen that the second ground is but a repetition of the first, for if these acts were ratified, then the law could not have justified a verdict finding the defendant guilty of a conversion.

For the sake of order and sequence, we thus distribute the grounds of the motion.

The appellant in this court has argued elaborately that there is in law no conversion under the evidence, and as there is no conflict in the evidence as to the circumstances under which defendant received the cotton and his subsequent exercise of control over it, we proceed to state, for the guidance of the court below, the conclusions of law upon the subject of conversion, which follow from the facts clearly established in this case. As a matter of course, what is here stated is

upon the pleadings as they now stand, and it must not be inferred from what is said that we express any opinion as to the evidence upon the question of the identity of the cotton or the property of the plaintiff in the cotton, or whether the sale was subsequently ratified. As the case now stands, we can only regard it in such light as admits the general property in the cotton in the plaintiff. Such is the clear admission of the plea under the rules governing in this action, according to the unvarying decisions of the English courts.

Hartridge, the plaintiff, bought during the war twelve bales of cotton from Griffin, of Lake City. He purchased by sample, never having seen the cotton. Eight bales of the cotton were shipped to Hartridge at Jacksonville, after the war, in the year 1865. This he received, and upon its shipment in lots of four bales to New York, one lot was sold by his factor, Brodie, at one dollar and eighty cents per pound, and the other at one dollar and fifty-five cents per pound. Griffin testifies that during the winter of 1865, the remaining four bales were shipped to Hartridge at Jacksonville. He did not receive them. Robinson, who was then receiving consignments of cotton at Jacksonville, stated in a conversation with Hartridge, had some time afterwards, that he had received four bales of cotton of which he had no advices, and as the cotton had been shipped to New York, he agreed to pay Hartridge for it when he received the account sales. Sometime after this, Robinson made Hartridge a payment of one hundred dollars on account of the cotton. Upon receipt of the account sales of the cotton shipped by Robinson, the price realized was nearly three times less than the other lots were sold for by Brodie, and Hartridge refused to accept the amount realized, and brought this action. The cotton, it appears, came to the depot at Jacksonville at a time when the defendant was receiving freight of like character. The persons in charge of the depot were doing business in a loose manner, permitting the draymen to take such cotton as they thought belonged to the persons for whom

they had been in the habit of carting goods. The drayman who usually carted for the defendant removed from the depot the four bales of cotton, and the defendant, who was then receiving consignments of cotton, supposing that this cotton was assigned to him, although he had no advice as to it, sent it to a vessel which was then loading for New York, and it was stored for shipment to defendant's agents and factors. The defendant admits that he was aware before the vessel sailed that he had shipped to New York these four bales of which he had no advices, and in addition states that efforts were made to get the cotton out, but the hatches were down and the vessel ready for sailing, and the master was not willing to disturb the cargo. The goods were shipped to New York, and were sold by the agents and factors of defendant.

There is and can be no doubt that the unauthorized sale of this property in New York by the authorized agent of the defendant was an act inconsistent with the general right of dominion and control of the owner of the property. The act of selling the property of another without his authority is an assumption of a right of the highest and most unequivocal character. A person selling property acts at his peril. If he assumes such authority over the property of another without the owner's consent, that he does not know the true owner will not avail him, nor will the actual retention of the proceeds for the true owner avail him as a defence. This cannot justify the assumption of dominion over the property, or avoid or excuse the conversion, which is the result of the act of sale. The owner cannot be obliged to receive the proceeds of an unauthorized sale of his property. If he deems the sale fair and for full value, he can accept it, but this is at his discretion. Says the court, in Gibbs vs. Chase, 10 Mass., 131: "He who interferes with my goods, and without any delivery by me, and without my consent undertakes to dispose of them as having the property general or special, does it at his peril to answer me the value in trover."

It may be stated as a rule, that when it is admitted or proved that the defendant, without authority, has sold the goods and received the money therefor, no further evidence of conversion is necessary. 3 Rob. Pr., 463; 6 Wend., 207; 1 Leigh, 86; Strob. Eq., 375; 5 Cowen, 326; 7 ib., 738; 23 Wend., 468; 18 Ala., 719; 40 Barb., 406; 1 Kelly, 391.

In this case a demand of some kind appears to have been made upon the defendant, but it was, under the circumstances, both unnecessary and unavailing. No demand is necessary to establish a conversion where a conversion is otherwise proved, nor is a demand effective if the failure to comply is explained by a want of possession, (8 Meeson & Welsby, 366; 3 Stark. Ev., 1497; Bull. N. P., 44; 1 Camp., 446; 2 Salk., 441; 1 Cush., 552,) as it was under the circumstances of this case, there having been a previous shipment and sale. The court, in 1 Cushing, 552, remarks: "No demand is necessary if the conversion is proved *aliunde*," and in illustrating this view, says: "So if a man finds property, he may lawfully take it *and take care of it*, but if he afterwards sells it without authority, that *ipso facto* will be a conversion."

A finding of property, or a possession acquired in any lawful manner, does not justify acts inconsistent with and in violation of the rights of the true owner, though he may be unknown; and in case of a sale, the retention of the proceeds, subject to the owner's control when discovered, will not justify the conversion. It is necessary in this case to determine and to state the time and place of conversion, for the rule as to damages in trover, under the circumstances disclosed in this case, is the value at the time and place of conversion, with legal interest to the date of the verdict. It is thus seen that it is necessary to determine the legal effect of the act of shipping the cotton beyond the State under the circumstances disclosed in this case, for if that act be a conversion, then the value must be the value at Jacksonville, and the time of the estimate and the date from which the

interest must be calculated must be the date of the shipment. Neither a naked possession nor every asportation accompanied with a recognition of the title of the true owner, and which is not to interfere with the dominion of the true owner over the chattel, constitutes a conversion; but " any asportation of a chattel for the use of the defendant or a third person amounts to a conversion, for the simple reason that it is an act inconsistent with the general right of dominion which the owner of a chattel has in it, who is entitled to the use of it at all times and in all places." 8 Meeson & Welsby, 547. In this case, the sending the cotton to the vessel and authorizing its being placed in the hold, was made with the impression that it was a consignment. Before the vessel sailed the defendant, receiving no advices as to it, made efforts to get the cotton out of the vessel, but the hatches were down and the ship was about ready to sail. The agent of the defendant, however, states in his testimony that he did not make much of an effort to get the cotton, as he believed it belonged to defendant.

That the defendant was doing a business in which it was his duty to ship cotton to New York for other parties, and that this cotton was shipped under the impression and belief that the act of shipment beyond the State and to a distant market was simply doing what the defendant thought would be the desire of the owner, cannot justify the act of shipping the cotton on his own account. The sale in this case was an assumption of general ownership and property; the shipment was the assumption of a particular power to place it in possession of the carrier for removal to a distant market, and though the bill of lading was taken in the name of a third party, it was in fact for the benefit and account of the defendant, and it was a shipment on his own account. It is not enough that such acts as these are done under the *belief* that the party doing them is the agent and factor of the true owner, and is invested with the special power and authority incident to such relations, and that it was the pur-

pose of the party to retain the proceeds of sale for the benefit of the true owner when discovered. Such act must be *authorized* by the owner, and if it is not, it is a conversion. It is an assumption of authority and power inconsistent with the right of the owner. The owner had a right to retain his cotton at Jacksonville, to ship it to Liverpool, or to make any other disposition of it that he saw proper. Directing its shipment, its actual shipment upon his own occount, beyond the State, destined for a particular market for sale, is an assumption of dominion over it, and being *unauthorized* by the rightful owner, constitute a conversion.

In the case of John Boyce and others vs. Jesse Brockway, (31 New York, 492,) the defendant had received at Cattskill and shipped to New York a number of firkins of butter, which were sold on his account. Plaintiffs instituted an action of trover against him. The butter had been purchased by a party who was making purchases as the agent of the plaintiffs as well as of defendants. It was delivered to defendant with other goods which had been purchased for him. He shipped it. Evidence was given on the part of the plaintiffs tending to show that when the butter was delivered to defendant at Cattskill, he was informed that some of the butter belonged to plaintiffs, but defendant testifies that he was wholly ignorant that any butter but his own was delivered to him. The court, in commenting upon this evidence, say : " The defendant gave evidence tending to show that he received the butter in question in good faith, supposing it to be his own, and without any knowledge that it belonged to plaintiffs. He requested the court to charge that ' in that case if he took the same care of it as his own, and it was lost without his fault, this action was not sustained.' The charge as requested would have been proper if the defendant had under such circumstances *simply received the butter and stored it in his warehouse.* Such an act would not have been the exercise of such dominion over it as would amount to a conversion without proof of a demand and refu-

sal. There would be no sufficient assumption of ownership by a mistaken acceptance of the property so delivered, to render him chargeable for any relation beyond that of bailee, but quite a different question arose when he shipped the butter to New York as his own. That was an assumption of dominion, which, whether founded in mistake or not, was in hostility to the ownership of plaintiffs." 1 Hill. on Torts, 76 and 77; 1 Wils., 328; 6 Wend., 603; 4 Denio, 323; 1 Kelly, 391; 3 Ark., 133; 9 Barb., 242; 49 Maine, 213; 41 Penn. State, 291; 18 C. B., 403; 34 Vt., 330; 36 N. H., 311; 14 Wis., 5.

It was urged in this case that the verdict was contrary to the evidence and law, the defendant insisting that even if acts inconsistent with the right of the owner were proved, that it was apparent from the evidence that the acts of ownership exercised by the defendant over this property, viz: the shipment to New York and sale, were approved by the plaintiff, that the plaintiff did not object to the shipment when advised of it, nor did he object to the *act of sale*, but that on the contrary, after being advised by defendant that he had shipped four bales of cotton that he had no advices of, which was perhaps his (the plaintiff's,) and that it was perhaps sold, it was agreed between the parties that defendant would pay for it when he got the account sales, that when the account sales was received, plaintiff declined to accept payment according to the account sales, on account of the small price for which it sold, and that defendant on account of the small price, concluded that the cotton he shipped could not have belonged to plaintiff. We deem it necessary to notice this, as it involves interesting questions as to the form of action in the several aspects in which the facts may be viewed, which facts we leave to the jury.

If the plaintiff in this case assented to, affirmed, agreed to, or ratified the the *act of sale* before the account sales was received, and his objections arose from the *results of the sale*, to wit: the smallness of price received, then there is no con-

version, and trover is not the appropriate form of action. 16 John., 74 ; 27 Ala., 229 ; 12 John., 300. If the act of sale was ratified or assented to, then if there was no breach of duty or fraud in the manner in which the act of sale was performed, the form of action is assumpsit. If there was a breach of duty or fraud in the act of sale, the remedy for the damage consequent upon the breach of duty, is a special action on the case. 3 Taunt., 11 ; 12 John., 300 ; 13 Ind., 41 ; 16 John., 76 ; 12 Pick., 139. As to what is the true state of facts, we must leave for the jury to determine under proper instructions, and as there is to be a new trial upon other grounds, the parties will have full opportunity of showing the true state of the case.

The third error assigned is that the court erred in refusing leave to defendant to file a plea denying plaintiff's title to the goods. Leave to file this plea was not requested until after the trial had commenced, and after the plaintiff had closed his testimony. The defendant's counsel, misapprehending the effect of his plea of the general issue, attempted to introduce evidence in denial of plaintiff's title, which was objected to as inadmissible, and the court very properly so held ; whereupon leave to file a plea of the character stated was requested and denied. The decision of this question involves a construction of the seventy-fourth section of the act to amend the pleading and practice in the courts of this State. This section is as fellows : " That it shall be the duty of the courts of this State, and of every judge thereof, at all times to amend all defects and errors in any proceeding in civil causes, whether there is anything in writing to amend by or not, and whether the defect or error be that of the party applying to amend or not ; and all such amendments shall be made with or without costs, and upon such terms as the court or judge may seem fit ; and all such amendments as may be necessary for the purpose of determining in the existing suit the real question in controversy between the parties, shall be so made if duly applied for."

The first question which arises is, whether the filing an additional plea of this character, raising an entirely new issue and enlarging the defence, is an amendment or a proper means of correcting an error or defect within the meaning of this section.

The second question which arises is, was it the duty of the court to have permitted it at this stage of the proceedings under the circumstances of this case.

We have no doubt that the filing of a plea is authorized by the section, in the event it is necessary to determine the true question in controversy between the parties anterior to the trial. This section is almost a copy of the 94th section of the Common Law Procedure act of 1854, (17 and 18 Vict. Ch., 125,) regulating the pleading and practice in the English courts, and we find little difficulty in giving it construction.

In Cornish vs. Abingdon, (1 F. & F., 562,) which was an action for money had and received, a count in trover was allowed to be added at the trial. In Taylor vs. Shaw, 1 C. & R., 1,057, it was decided that "a judge at *nisi prius* may in his discretion allow a count or plea to be added."

These decisions were made under the Common Law Procedure act of 1852, but they are entirely applicable to the corresponding section of the act of 1854, when the question is of the same character with the one now being considered. The filing of such a plea should therefore be permitted if it is necessary to determine the true question involved in the controversy between the parties. From the evidence in this case, among the questions in controversy between the parties, is the question of title to the goods. The plaintiff himself went into evidence to prove title, a large portion of his proof being applicable to that subject. The defendant in his testimony states that upon receiving the account sales, he said to plaintiff that the cotton was sold, and that it was so poor he must conclude that it was not his, (plaintiff's,) cotton. In addition to this, the very great difference in the price re-

alized for the four bales of cotton, sold by defendant's agents in New York, and the cotton sold by Brodie, the agent of Hartridge, which plaintiff claims was of the same quality and lot with the cotton received by the defendant, makes it a question whether the cotton received by the defendant belonged to the plaintiff. If the jury believe that the sale by defendant's agents was in all respects fair and for full value, or if indeed they believe the testimony of the agents and the witnesses examined in reference to the sale, they certainly cannot believe that the cotton sold by Lyles & Polhamus, (defendant's agents,) was a portion of a lot some of which sold about the same time for nearly three times as much. In order to reach a conclusion favorable to the defendant upon this testimony, they necessarily decide that the cotton received and sold by defendant's agents was not, and could not have been a portion of the identical lot sold by Griffin, and in coming to this conclusion they necessarily decide plaintiff has no title, as he claims no other than four of the twelve bags which he purchased of Griffin.

We think it appears from the testimony that the question of title was one in controversy between the parties, and that a fair trial disposing of all the questions requires that this question should be submitted to the jury : Was the application duly made ? The statute makes it the duty of the courts *at all times* to allow such amendments as may be necessary for the purpose of determining in the existing suit the real question in controversy between the parties, if duly applied for. As shown, the English courts have gone so far as to insert at the trial a count in trover, where the declaration was in assumpsit for money had and received. This is a blending in the same case of forms of action arising from contract with those arising from wrongs independent of contract. They have also permitted a plea to be added at the trial. It is insisted that the plaintiff had closed his testimony and it was too late, that such an application was not a due application within the meaning of the statute.

34

It would be a very unjust rule which would permit the plaintiff to amend his declaration by adding new counts after he had commenced the introduction of his testimony, and permit him to so amend his pleading as to combine actions *ex delicto* with those *ex contractu* whenever necessary to determine the true questions in controversy, and at the same time to deny to the defendant the privilege of amending his pleas after he had commenced an examination of his witnesses, simply because the plaintiff had closed his testimony. In this case the court should have permitted the filing of the plea, the jury should have been discharged from the consideration of the case, (as they were not sworn to try the new issue,) the plaintiff given such time as was proper under the statute to reply to the amended pleading of the defendant, and when the issues were made up, the case should have again been submitted to a jury. If the plaintiff had desired a continuance, we think the court should have granted it, because under the pleadings the question of title was not in issue, and he was not expected to be prepared with any proof upon that subject. This course would have enabled the parties to try the true questions in controversy, would have prevented any surprise of the plaintiff, and would have left no reasonable ground of complaint for either party. In this case, we control the action of the court below in the matter of amending the pleadings under and by virtue of the provisions of the act of January 7, 1853, which makes any order refusing to allow a motion to amend the pleadings the subject of review in this court. In the English courts the contrary practice prevails.

The judgment is reversed. The case is remanded to the court below, where the defendant will be permitted to amend the pleadings upon such terms as to costs as the court may direct, and for further proceedings not inconsistent with this opinion.