## JERVIS v. HOYT.

*Agency — duty of factor — discretion — acts in excess of authority — perishing*
*property — ratification.*

A factor is bound to obey the orders of his principal, but where no orders are given, or where they are not clear, explicit, and peremptory, the factor is only bound to good faith and reasonable discretion.

Plaintiff owned several lots of grain, etc., which was pledged as security for various loans, and which he desired to have sold for a sum greater than the amount of the loans. He left the management of the matter to the defendants as his factors. One of the lots consisted of three boat-loads of corn, which was pledged for a loan of $23,000. The defendants having discovered that one of the boat-loads was heated and receiving damage, took it out of pledge by an arrangement whereby defendants assumed the payment of the whole $23,000. At the time the price of corn was rising in market. *Held,* that this was within the authority of defendants, and, even if they had not authority, the emergency was such as to justify them in the act, and they were not liable to plaintiff for a loss resulting from the sale of the damaged corn.

After the transaction came to plaintiff's knowledge he made no objection, and afterward directed defendants to make no further sales of corn. *Held,* a ratification of the acts of defendants.

APPEAL by defendants from a judgment in favor of plaintiff entered upon the report of a referee.

The action was brought by Benjamin F. Jervis against Jessie Hoyt and others, to recover a balance of account between plaintiff and defendants. The action was brought in Madison county, and the place of trial was subsequently changed to Kings county. The facts were these : During the season of 1868 plaintiff, who was a banker at Cazenovia, made large advances to the firm of Munn & Scott, of Chicago, on corn and grain shipped by them to the firm of Powell & Company, of New York city. After said shipments, and in the early part of November, 1868, Powell & Co. failed. On the 16th of November Powell & Co., who then had five lots of corn and one lot of flour, pledged as security for six loans made to them by the New York Guaranty and Indemnity Company transferred their interest to plaintiff. At that time there seemed to be a margin upon said corn over and above said loans for which it was pledged of several thousand dollars. For the purpose of effecting a sale of the grain and corn plaintiff employed defendants, who were factors and dealers in grain doing business in the city of New York.

One of the lots of corn held in pledge consisted of three boat-loads of corn upon which there was a loan of $23,000. The material facts in relation to this lot, which is the only matter in controversy in this action, are sufficiently set forth in the opinion.

*C. Van Santvoord*, for appellants.

*A. H. Bailey*, for respondent. Defendants violated the instructions of plaintiff, and were therefore liable for any loss. *Seymour* v. *Wickhoff*, 10 N. Y. 213 ; *Evans* v. *Root*, 7 id. 186 ; *Scott* v. *Rodgers*, 31 id. 676 ; *Hays* v. *Stone*, 7 Hill, 128 ; the acquiescence of plaintiff was not a ratification. *Delafield* v. *State of Illinois*, 26 Wend. 192.

TALCOTT, J.   The referee in this case has held that the plaintiff is properly chargeable with the losses which occurred on all the lots of corn taken up in behalf of the plaintiff from the "New York Guaranty and Indemnity Company," except the loss on what is known in the case as the $23,000 lot, as to which he determined that the loss, which he states at $5,138.25, must be borne by the defendants.   On a careful examination of the case, we think the referee erred in charging the loss on the $23,000 lot to the defendants for several reasons.   The defendants in this matter were the factors of the plaintiff.   A factor is bound to obey the orders of his principal.   But where no orders are given, or where they are not clear, explicit and peremptory, the factor is only bound to good faith and reasonable discretion.   Story on Agency, §§ 74, 186 ; *La Farge* v. *Kneeland*, 7 Cow. 456.   And an examination of the testimony and correspondence contained in the case, shows that the general relations between the parties were that the plaintiff in regard to all this property, while of course expressing the hope and expectation of being able to get out of the transaction with the Indemnity Company at a profit, or at least without any loss, still confided in the judgment, good faith and discretion of the defendants to manage the matter as his factors, and, as they might think, to his advantage.   It does not appear that the defendants have been wanting in reasonable discretion, and no attempt is made to impeach their good faith, nor, so far as we can discover, is the plaintiff able to put his finger upon any specific order which the defendants have violated.   But more closely to examine the history of what is called

the $23,000 lot. We find that the Indemnity Company held this lot for a specific advance of $23,000. It consisted of three boat loads of corn, in all something over 22,000 bushels, in the boats J. C. Harper, Hattie Eliza and R. W. Boyd. This, with the other lots, was in the hands and custody of the Indemnity Company, under the arrangement made by the plaintiff, that he might at his option take out of their custody any particular lot or part of a lot upon paying up the advances which had been made upon that lot. The whole was under the general charge of the defendants at New York as the factors of the plaintiff, who resided at Cazenovia in Madison county. On the 23d day of November, 1868, the defendants discovered that the cargo of the R. W. Boyd was heated and was receiving damage. The market was then rising. To prevent further loss and damage to the cargo of the R. W. Boyd, the defendants made an arrangement with the Indemnity company whereby they were permitted to take out of the custody of the company the cargo of the Boyd and sell the same, upon the agreement that in a few days they would pay the whole $23,000 advanced on that lot, and take the whole of it. And they became thereby bound to pay the company the whole $23,000 before or at the maturity of the loan.

As we understand the case, and as the acts and correspondence of the parties demonstrate the authority to take up any or all the loans when they should think it for the advantage of the plaintiff, was confided to the discretion and judgment of the defendants. But without reference to this general authority such an act as the taking up of the $23,000 loan, on a rising market, for the purpose of saving one of the cargoes from perishing was within the general powers of the factors. Emergencies may arise in which an agent or factor may, from the necessities of the case, be justified in assuming extraordinary powers, and his acts, fairly done under such circumstances, bind the principal. Amongst other emergencies acts done in the *bona fide* effort to save perishing property is one. Story on Agency, § 141. When the defendants bound themselves to take up the whole $23,000 lot, the market was rising, and if the corn could have been sold without unnecessary delay, not only there would have been no loss, but, as Hazeltine testifies, and which is undisputed, a very considerable profit would have accrued to the plaintiff upon that lot.

But we think, moreover, that the plaintiff ratified the transaction

by which the defendants became bound to take up the whole
$23,000 loan.   On the 24th day of November, the same day on which
the defendants had agreed to take it up, or the next day, they wrote
to the plaintiff as follows :   " We find, on examining, the corn left
with the Indemnity Company all in good order, except boat R. W.
Boyd, 6,426$\frac{3}{6\,6}$ bushels.   This load is a very unsound one ; has been
kiln-dried when *hot* and is now alive with weevil, who have eaten
into the grain.   Scarcely a kernel but cut.   We sold this load at
107½ in store just as it is.   It will have to be turned over several
times to get the weevil out of it.   Prime corn was steady at 112 a
114 cents, in store ; 116 a 116½, afloat."   The plaintiff had a list of
all the lots of corn held by the Indemnity Company, with a state-
ment of the amount loaned on each lot, from which it appeared
that on the loads of the three boats, of which the R. W. Boyd was
one, there was a loan of $23,000, due December 21, 1868, and he
knew that, according to his arrangement with the Indemnity Com-
pany, the sale of the cargo of the Boyd involved the taking up, or
the agreement to take up, by the defendant in his behalf of the
whole loan of $23,000.   On the 26th of November the plaintiff
wrote the defendants as follows:   " I have received your advice of
sale of two loads of corn.   The market runs against us so far.   Mr.
Munn urges that the sale be slow at present.   I will go to New
York either Saturday or Monday."   This was apparently in reply
to two letters of the defendants under date of the 23d and 24th.
And apparently one of the loads referred to as sold is the cargo of
the R. W. Boyd.   At all events, it does not appear that the
plaintiff made any objection to, or found any fault with the trans-
action.   On the 28th day of November the plaintiff telegraphed to
the defendants, " Hold balance of corn till I get to New York,"
On the 30th the plaintiff wrote the defendants:   " Yours of 27th
received.   Glad to notice some improvement in the market.   At
request of our Chicago friends I telegraphed you on Saturday not
to make further sales until I see you.   I expect to be in New York
Wednesday."

If the principal objects to the acts of his agent, he ought to dis-
sent and give notice of such dissent in a reasonable time, or his
assent will be presumed, even in case of a violation of instructions.
*Vianna* v. *Barclay*, 3 Cowen 281; *Cairnes* v. *Bleecker*, 12 Johns.
300.   The effect of the defendants' silence as to the agreement to
take up the $23,000 loan was this: Being assumed by the factors

to be the corn of the plaintiff and held by them in his behalf, of course it came under the orders of the plaintiff not to sell until he arrived at New York, or gave further directions. Whereas, if the plaintiff had intended to repudiate the transaction and claim that the defendants had made that lot of corn their own, he should have done so at once, as it appears from the undisputed testimony of Hazeltine it might then have been sold at a considerable profit. A principal cannot, by preserving silence on being informed of his factor's transactions in his behalf, keep himself in a position to avail himself of the transaction if it proves to be profitable, and repudiate if otherwise. And this appears to be what the plaintiff seeks to do in this case.

Being under orders not to sell, the defendants did not pay the balance of the $23,000 to the Indemnity Company till the loan matured, on the 21st December, 1868. In the meantime the plaintiff had been in New York as was shown by the entry of his name in his own handwriting on the hotel register. Mr. Hoyt, one of the defendants, says that while plaintiff was in New York at that time, he expressly instructed him to take up the $23,000 loan at maturity. The plaintiff, however, claims to have no recollection of having been in New York till the following summer. And the referee makes no finding in regard to any personal interview between the parties, after the original employment of the defendants as factors. It is very clear, however, that the plaintiff was fully advised of the payment of the $23,000 loan by the letter of the 22d of December, and that the defendants then had on hand for the account of the plaintiff, amongst other corn, the two remaining boat loads of the $23,000 lot. He was also informed of this in other letters and by the accounts rendered him from time to time, but never disavowed the transaction, or objected to it, till long after it had taken place, and when, as it seems to us, a considerable loss on this $23,000 lot had accrued, apparently from the instructions of the plaintiff to withhold it from sale, when it could have been sold at a profit. We do not see how, upon the evidence afforded by the case, the defendants can be held liable for the loss on the $23,000 lot which is all that it is necessary to consider on this appeal. We think the defendants were justified in their agreement to take it up under the circumstances, and at the time when they did so. And if they were not strictly justified in so doing, the plaintiff ratified the transaction by omitting to object to it

within a reasonable time after notice of it, but instead, writing as though he understood and approved of it.

A new trial must be ordered with costs to abide the event and a new referee substituted.

*New trial ordered.*