Dudley *v.* Hawley.

---

## Dudley *vs.* Hawley.

The defendant, a jeweler, received from A. and wife a set of diamond ear rings and pin, supposing they were the owners, and as their agent and for their accommodation, he negotiated a sale of them to R. & B., of New York city, for $200. He received the proceeds of sale, and paid the same over to A. in ignorance of the plaintiff's title, and without any charge for services. *Held* that he was liable, in an action of trover, to the true owner, for the value of the property.

The mere possession by the mortgagor of personal property for more than a year after forfeiture of the mortgage, with the assent of the mortgagee, does not enable the former to give a good title, in the absence of authority to sell. Nor does it make the mortgagee guilty of that species of negligence or misconduct which should estop him from afterwards asserting his title,

as against a third person who voluntarily, but in ignorance of the true title, assists the mortgagor in the wrongful conversion of the property. BACON, J. dissented.

A third person, *it seems,* would not be liable for merely receiving the property through a delivery made to him by the wrongdoer, and without any participation in the tort of the latter, other than is necessarily implied in innocently receiving that which there is no right to give. But this protection does not extend to subsequent acts amounting to a conversion or asportation, although done in good faith and without knowledge of the true state of the title; nor unless his share in the transaction has been merely passive and limited to accepting and paying for the goods in the usual course of business. *Per* MORGAN, J.

THIS was an action brought by the plaintiff against the defendant, to recover the value of one set of diamond ear rings and one diamond pin, which the defendant sold to Randall & Bareman, of the city of NewYork, as the agent for Mrs. Eugenia Ashby, the wife of Charles Ashby, and which Charles Ashby placed in his hands for sale. The action was referred to George F. Comstock, as sole referee, to hear and determine. It appeared in evidence that the diamonds belonged to Mrs. Ashby, and that she and her husband, on the 25th day of August, 1859, executed a mortgage to the plaintiff, of the property in question, together with other property, with a condition to secure the payment of $600, with interest, in one year from the date thereof; and to save the said plaintiff himself from any damages, costs and charges he might sustain in consequence of any illegal act, misfeasance, malfeasance or nonfeasance of the said Charles Ashby, while in the employ of the plaintiff as a clerk and agent in a grocery store to be established by the plaintiff in the city of Syracuse. This mortgage was filed in the proper office, August 26th, 1859, and renewed in due form, August 9th, 1860, with a statement that there was due thereon $600 with interest and the covenant of indemnity still in full force and effect.

The plaintiff then produced in evidence the pleadings in a case in the supreme court, wherein John G. Dudley was plaintiff and Charles Ashby and wife were defendants, to foreclose the equity of redemption in that mortgage. That suit was

commenced March 9, 1861, and was referred and a report obtained in favor of the plaintiff. The amount reported due on the mortgage was $1252.61. No judgment was entered thereon.

The defendant gave evidence tending to show that Charles Ashby brought the diamonds to him March 25th, 1861, and the defendant sent them to New York, to a house, to learn the value of them, and that after ascertaining their value he sold them to Randall & Bareman, took their check for the proceeds, and gave the whole of it to Charles Ashby, reserving nothing nor charging any thing for his services. He testified that Charles Ashby brought the diamonds into his store and offered them for sale; that he declined to buy, but offered to send them to New York, to a house he had perfect confidence in, and see what they were worth. Ashby said the diamonds belonged to his wife, and that he wanted to raise some money to start some little business with. The defendant supposed he was selling them as the agent and for the benefit of Mrs. Ashby. The plaintiff produced two letters of the defendant; one of March 26th, 1861, directed to Mr. Charles Billings, of New York, as follows:

*"Syracuse, March* 26, 1861.

Mr. Charles Billings—Dear Sir: At the request of a lady friend of mine I send her diamond pin and ear rings to see what they could be sold for. She has been unfortunate and will be obliged to realize upon them to get along. Will you please inform me what would be the most that R. & B. would give for them, and I will reply at once whether they can buy the goods at the offer."

The other letter was in reply to Billings, and was dated March 30, 1861. He states in this letter, that " the owner of the diamonds is forced to sell them. She is very much disappointed that she cannot realize more than you think. She says she paid $365 for them. Allow all you possibly can and remit check for the amount, and oblige yours truly.

J. DEAN HAWLEY."

Dudley *v.* Hawley.

The plaintiff then gave in evidence the letter of Randall & Bareman, enclosing their check to the defendant for $200, and the letter of Willard & Hawley acknowledging the receipt of the same, and stating therein that it "proved satisfactory to the party for whom we disposed of the diamonds."

The referee found specially that the defendant acted in good faith, but that the title to the diamonds was in the plaintiff at the time of the alleged conversion. That he had no doubt of the good faith of the mortgagee, although the property was kept in possession of the mortgagor; but that the question of fraud did not arise, because the defendant was neither a creditor of the mortgagor nor a purchaser. That the mortgagors were undoubtedly guilty of converting the diamonds; and what the defendant did, he did as their agent and at their request. He is not in a situation to raise a question of fraud. The referee then proceeds as follows: "3. Nevertheless, the plaintiff left the property in possession of the mortgagor, not only during the year in which the mortgage was in life, but for more than a year afterwards. Ashby, or his wife, was then suffered to continue the apparent owner, and enabled to commit the wrong complained of. Hawley was an innocent party who relied upon such apparent ownership. He acted as agent, merely acting in the general line of his business, and made no profit by the transaction. As he was not a creditor or a purchaser, so he is in no manner affected by the filing of the mortgage. Indeed the filing of a chattel mortgage I do not understand even to have the effect of notice, nor does it repel any presumption of fraud. Upon the facts as stated, I think it is not just that the plaintiff should recover, and I decide that such is not the law."

The plaintiff excepted to this finding of law, and after judgment, appealed to the general term of this court.

*George N. Kennedy,* for the appellant. (1.) By the terms of the mortgage the title, by forfeiture, to the property mortgaged vested in the plaintiff, the mortgagee, subject only to

Dudley *v.* Hawley.

an equity of redemption in the mortgagors. And the plaintiff was entitled to the possession thereof. (8 *John.* 96. 7 *Cowen,* 290. 9 *Wend.* 80. 12 *id.* 61. 11 *id.* 106. 4 *Hill,* 271.) A conversion of the property by the mortgagors would have entitled the plaintiff to maintain an action against them therefor. (2.) The defendant, acting as agent for the mortgagors, sold the property and paid the proceeds over to them, and although he may have acted in good faith in disposing of it, still he is liable for having converted the property. He stands in the same position as the mortgagors, and can claim no exemption from liability which they might not. (9 *Barb.* 230 ; *affirmed* 10 *N. Y. Rep.* 335. 22 *Wend.* 285, 315. 11 *id.* 80. 2 *Adolph. & Ellis,* 500. 2 *Strange,* 813. 4 *Denio,* 323. 6 *East,* 540. 9 *Wend.* 167. 2 *Hilliard on Torts,* 557. 4 *Maule & Sel.* 259. 16 *Ala. Rep.* 682. 6 *N. H. Rep.* 247. 1 *Wilson,* 323.) (3.) The distinction in the rule as to the rights of parties in relation to personal property proper and commercial paper, is well defined. While the innocent holder of the latter may protect himself against the claims of the true owner, every one who interferes with the rights of the owner to the former is liable to the true owner therefor, however innocently he may have acted.

*R. H. Gardner,* for the respondent. (1.) The defendant Hawley was the agent of Charles Ashby and wife, in negotiating a sale of the diamonds in question, and had no knowledge that there was any claim upon them, or trouble about them. He did not know the plaintiff, and had never heard that there was, or ever had been any dealings between him and Ashby, or Ashby and wife. He was therefore an entirely innocent party in what he did, and there is no rule of law, or principle of equity, that will hold him answerable for the value of the diamonds. (2 *Comst.* 126.)

(2.) The plaintiff allowed the diamonds to remain in the possession of Ashby and wife, after they were mortgaged,

Dudley v. Hawley.

which enabled them to defraud the plaintiff by placing them in the hands of Mr. Hawley, (a practical jeweler,) to be sold.

(3.) The plaintiff now seeks to make Mr. Hawley suffer for the wrong or fraud of Ashby and wife, of which he, Hawley, had no knowledge, and which wrong or fraud they were enabled to perform by the plaintiff's own act.

(4.) It is well settled by authority that where one of two innocent persons must suffer by the fraudulent acts of a third person, the one who enables such third person to commit the fraud must bear the loss. (13 *Wend.* 572. 23 *id.* 268. 6 *id.* 620. 20 *Barb.* 493. 25 *id.* 497.)

MORGAN, J. The defendant, being a jeweler, took the diamond ear rings and pin and negotiated a sale of them to Randall & Bareman, of New York, for $200. He acted in the transaction simply as the agent of Ashby and his wife, and to accommodate them, supposing at the time, in good faith, that they were the owners of the property. The proceeds were transmitted to the defendant, and he without any compensation whatever delivered them over to Ashby and wife. He did not otherwise interfere with the property. The property in fact belonged to the plaintiff, by virtue of a personal mortgage, executed to him by Ashby and wife. This mortgage bore date August 25th, 1859, and was given to secure the payment of $600, in one year from its date, and also to indemnify the mortgagee against the misconduct of Ashby while he was a clerk and agent in the plaintiff's employ. The plaintiff had never taken actual possession of the property. The learned referee finds as matters of law: 1. That the title to the diamonds was in the plaintiff at the time of the alleged conversion; 2. That the mortgage was given in good faith, and no question of fraud arises in the case; 3. But that the plaintiff left the property in the possession of the mortgagors for more than a year after forfeiture, and that thereby Ashby and wife were suffered to continue the apparent owners and enabled to commit the wrong complained of,

and that the defendant was an innocent party, who relied upon such apparent ownership ; and as it is not just that the plaintiff should recover against him, he held as matter of law, that he cannot recover.

This was a short way to come to a conclusion, and such would undoubtedly be the first impression of most lawyers who did not give the question a more critical and extended examination. In *Lee* v. *Mathews,* (10 *Ala. Rep.* 687,) Judge Osmond, in delivering the opinion of the court, observed, that the first impression of the court was that the defendant having acted merely as the agent of another person, and having parted with the possession before he received notice of the title of the plaintiff, was not responsible in an action of trover for the conversion of the property, but that the suit must be brought against the principal. Subsequent reflection, however, satisfied the court in that case, that it was mistaken, and that the principles upon which it relied did not govern such cases. My own impression was, when the case was opened, that this action could not be sustained; but I am compelled to believe that I was mistaken, for a subsequent examination of the authorities has convinced me that the defendant, although innocent of any intentional wrong, is answerable to the true owner of the property for having negotiated a sale of it on behalf of Ashby and wife, who, it is admitted, are guilty of a conversion. It is said in *Saunders on Pl. and Ev.* 1157, that if a party claims the property in the chattels as *his own,* or even asserts the *right of another* one therein, it will be evidence of a conversion ; as where it was found that a bankrupt, being indebted to G. delivered goods to G.'s servant, who gave a receipt for them in his master's name and sold them for his master's use, the court determined that the sale, whether for the *use of the seller or another,* was a conversion; for when a person takes it upon himself to dispose of another's property, it is a tortious act and the gist of the action. (*Perkins* v. *Smith,* 1 *Wilson,* 328. *S. P. Parker* v. *Gidin,* 2 *Stra.* 813.) Accordingly in

*Stephens* v. *Elwall,* (4 *Maule & Sel.* 259,) it was held that a servant may be charged in trover, though the conversion be done by him for the benefit of his master.   Lord Ellenborough, C. J. said that "the clerk acted under an unavoidable ignorance and for his master's benefit, when he sent the goods to his master ; but nevertheless his acts may amount to a conversion ; for a person is guilty of a conversion who intermeddles with my property and disposes of it, and it is no answer that he acted under authority from another who had himself no authority to dispose of it.   And the court is governed by the principles of law, and not by the hardship of any particular case."   So in case of factors, where A. consigned the goods of B. to C. and C. without notice of the right of B. sold a part and kept the remainder in his possession, the sale was held to be a conversion.   (8 *Taunt.* 237.   2 *Mod.* 181.   *Saund. on Pl. and Ev.* 1158.)   So trover will lie against a carrier who delivers goods to a wrong person, though by mistake, *(Id.* 1159) ; or against a warehouseman for delivery to a wrong person, as when he deliverers goods upon a forged order.   *(Id. and cases cited.)*   And it is no answer to the true owner, to say that the person so disposing of the goods was ignorant of his title, and that he disposed of them for the use and benefit of another.   In *Hoffman* v. *Carow,* (22 *Wend.* 285,) the authority of the English cases was fully confirmed.   It was there held that an auctioneer who sells stolen goods is liable to the owner in an action of trover, notwithstanding that the goods were sold by him and the proceeds paid over to the thief, *without notice* of the felony.   In *Williams & Chapin* v. *Merle,* (11 *Wend.* 80,) the defendant purchased, in good faith, in the regular course of his business as a broker, without suspicion of any infirmity in the title, yet he was holden liable in trover to the true owner of the property.   In *Thorp* v. *Burling and others,* (11 *John.* 285,) one of the defendants was a cartman, and although there was some suspicion that he did not exercise sufficient precaution at the time the goods were taken, he was held liable with the others

Dudley *v.* Hawley.

in trover, for the wrongful taking.   Spencer, J. observed: "It is true he did this at the request of other persons; but he was by no means bound to obey their orders, or yield to their request.   He was a voluntary agent and an actor in an unlawful transaction."   The judge, however, adds: "He could not but perceive it was a hazardous enterprise, from the large assembly of people at the spot."   This circumstance did not, I think, influence the decision.   In *Everett* v. *Coffin & Cartwright*, (6 *Wend.* 603,) the defendants, in ignorance of the rights of the true owners, obtained possession of the goods from the master of the vessel with whom they were shipped, and by his direction sold them, and they were held liable.

There is a class of cases which hold that the defendant cannot be made liable either in trespass or any other form of action, for simply receiving goods wrongfully delivered to him by the person in actual possession.   (*See Storm* v. *Livingston*, 6 *John. R.* 44; *Marshall* v. *Davis*, 1 *Wend.* 111; *Nash* v. *Mosher*, 19 *id.* 431; *Barrett* v. *Warren*, 3 *Hill*, 350; *Pierce* v. *Van Dyke*, 6 *id.* 614.)   The result of these cases would seem to be that "while no liability is incurred by the purchase or acceptance of goods, in ignorance of the title of the true owner, *unless they are subsequently disposed of to a third person*, or appropriated to the use of the vendee or bailee, yet that the benefit of this principle cannot be claimed without proving that they came to his hands through a delivery made by the wrongdoer, and *without any participation in the tort of the latter, other than is necessarily implied in innocently receiving* that which there is no right to give.   (*Millspaugh* v. *Mitchell*, 8 *Barb.* 333.   *Ely* v. *Ehle*, 3 *Comst.* 506.   1 *Smith's Lead. Cas.* 488.)   And the better opinion would seem to be that ignorance of the defendant of the wrong done by the person from whom he receives the goods, will not protect him from responsibility *for subsequent acts amounting to a conversion or asportation*, although done in good faith and without a knowledge of the true state of the title.; (*Cobb* v. *Dows*, 9 *Barb.* 230;) nor unless his

share in the transaction has been purely passive and has been limited to accepting and paying for the goods in the usual course of business. (*Ely* v. *Ehle*, 1 *Smith's Lead. Cases, supra.*) But in *Stanley* v. *Gaylord*, (1 *Cush.* 550,) it was announced, without qualification, that "whoever takes the property of another, without his consent, express or implied, or without the consent of some one authorized to act in his behalf, takes it in the eye of the law *tortiously.*" Judge Wilde, however, thought the rule as laid down in the New York cases more accurate than just, (*p.* 555,) but he was overruled by his associates. I cite this case to show that the rule established by the New York cases is as favorable to the defendant as the law will warrant us in going to sustain his defense. The question was there examined at great length, and with much learning, and it was held that a bailor might maintain an action of *trespass* against one who took the property from the possession of the bailee, under a mortgage given by the bailee to secure his own debt, without a previous demand; although the defendant was ignorant of the plaintiff's title and took the property in good faith. Wilde, J. who dissented, observed: "The case, therefore, depends upon the question whether one who in good faith obtains possession of goods or chattels from a party in possession, under a sale from him, is liable to an action of *trespass* by the true owner;" and he agrees with the New York cases that the action of *trespass* will not lie; but in case of *conversion* the proper action is trover. The *conversion* of the property being established, it is immaterial whether it occurred through design, mistake or ignorance, or whether or not it was profitable to the defendant. (*Platt* v. *Tuttle*, 23 *Conn. Rep.* 233. *Justice* v. *Mundell*, 14 *B. Monroe*, 12.)

The defendant having taken the property, and negotiated a sale of it for the benefit of Ashby and wife, must be held liable in this action, although he would have been excused for merely receiving the property into his possession in the ordinary course of his business, if he had not also aided the mort-

Dudley *v.* Hawley.

gagors in disposing of it to other parties. This was an act of *conversion,* in which the defendant was a voluntary actor, without excuse, except a very laudable desire to accommodate Mrs. Ashby. I think the laws holds him liable to the owner in such a case, although he did not participate in the proceeds. (22 *Wend.* 235.)

It is, however, claimed by the defendant's counsel, and assented to by the learned referee, that inasmuch as the plaintiff allowed the diamonds to remain in possession of Ashby and wife for a long time, he was guilty of that species of negligence or misconduct which should estop him from now denying the right of Ashby and wife to give the property to the defendant to be sold for their benefit; and that where one of two innocent persons must suffer by the fraudulent acts of a third person, the one who enables such third person to commit the fraud, must bear the loss. But I think the defendant cannot invoke the aid of this principle in this case. The only evidence of misconduct or fraud, consists in his leaving the mortgagors in possession of the diamonds. It is said in 2 *Smith's Lead. Cas.* 663, that the mere transfer of possession, and even of the *indicia* of title, to an agent or buyer, will not enable him to give a good title, in the absence of authority to sell. (*And see* 1 *Smith's Lead. Cas.* 896, 897.) The bare possession of goods by a bailee has never, as I am aware, been held to confer upon him such an apparent ownership as will estop the true owner from pursuing his action against all those who voluntarily interfere in their subsequent conversion. It appears in this case that the mortgage was duly filed to make it valid as against subsequent purchasers, so that it is not claimed that the title passed to Randall & Bareman on the ground of fraud in the mortgage. The defendant cannot, therefore, protect himself under the title of the purchasers, even if the referee was mistaken in his opinion that the defendant was not in a position to raise such a question. And I am inclined to think the referee was right in this view of the case, unless the evidence should authorize the

conclusion that the defendant acted as the agent of the pur-chasers instead of the vendors. Doubtless this is a hard action, but I do not see how we can relieve the defendant without overturning well settled principles.

The judgment should be reversed and a new trial granted, costs to abide the event.

MULLIN, J. also read an opinion for reversal.

ALLEN, J. concurred.

BACON, J. dissented.

Judgment reversed and new trial granted.

[JEFFERSON GENERAL TERM, October 6, 1863. *Allen, Mullin, Morgan* and *Bacon,* Justices.]