Tappan, J.
In October, 1868, the plaintiffs agreed to sell the defendants Akin & Co., a cargo of corn per boat Toronto., Mr. Hazeltine, one of the plaintiffs, testifies: "I told Akin I would sell him this load of corn at one dollar and fourteen cents, he to pay demurrage, if boat not unloaded that day. I asked him where I should send the boat to have it unloaded ; he said to Baker & Montague’s store.”
Akin took the sample-box containing the corn, and the plaintiffs sent the boat and cargo, as directed by the buyers, to the warehouse of the other defendants, tinker & Montague, to have the corn discharged. The warehouse receipt was made out in the name of Akin & Co., the buyers ; it came to their hands from the warehousemen, and they immediately, on the day they received it, negotiated a loan of seven thousand five *408 hundred dollars thereon with the other defendants Cammann & Morrison, who thereupon received the warehouse receipt or certificate with the indorsement of Akin & Co. The sale was on Saturday. The boat was discharged Saturday afternoon and Monday, on which day the warehouse receipt was issued and loan obtained. The buyers became insolvent shortly before or immediately after they had made the contract, of purchase of the cor.n, and they failed to pay the plaintiffs therefor. Their insolvency, at the time of the purchase, is not questioned even by themselves, but they claim that, as a fact, it was not then known to them. Plaintiff Hazeltine, on ascertaining that Akin & Co. had the warehouse receipt, went to them and demanded it. They said they had borrowed seven thousand five hundred dollars on it. Hazeltine then testifies: “ I told Akin, the property being ours, the money was ours, and I wanted the money.” Akin, in his testimony, says, “ that it was only the third day after sale, and the money was not due the plaintiffs at the time of this demand.”
The plaintiffs demanded the property of Akin & . Co. without delay, and then brought replevin. The defendants Cammann & Morrison, counter-bonded and took possession of the grain, and subsequently sold the same for other advances. Ho demand of the grain was made of them, but the plaintiffs demanded the warehouse receipt of them.
The plaintiffs, to maintain their right to the property, aver, that by the terms of sale and the custom of the trade, there was to be no possession in the buyers until payment, and that by failure of payment the title to the property did not pass out of the plaintiffs or to any of the defendants.
The testimony of a number of witnesses for the plaintiffs, dealers in grain, of large experience, was to the effect of a custom for the -protection of the seller, *409 which may be stated as follows : The grain is taken to the warehouse with a sample-box containing seller’s card; the weigh-master ascertains the quality, as compared with the sample furnished him for that purpose by the buyer, also the quantity or weight. The returns are then made out and sent with the warehouse receipt usually to the seller, who from them makes out the bill and account against the buyer, and upon settlement or payment transfers the returns and warehouse receipt to the buyer, and then the delivery becomes complete and title passes, and the buyer becomes the owner.
The custom would bind the parties to the transaction, or those who could be charged with knowledge thereof, but it is doubtful whether the custom is of such publicity or regularity as to charge the defendants Cammann & Morrison, who were not directly in that line of trade. In fact, it would seem that there is a duty incumbent bn the warehouseman in making out or delivering the warehouse receipt. And one of the plaintiffs, Hazeltine, testifies: “The seller thinks the warehouseman must be sure that he gives proper receipt to the proper party; it is his business to see that he gives it to the owner.” “It is the warehouseman’s business to find out the seller, and one of the risks of his doing business.” And further on he says,, “he must pay the penalty of a mistake in making erroneous delivery of a warehouse receipt to buyer instead of seller.”
And the query arises whether this does not indicate the plaintiff’s proper remedy in this case.
Mr. Hazeltine further testifies, “that since this transaction, and to prevent repetition of anything similar, the plaintiffs have changed the form of their orders.” That is, as I gather from other parts of the testimony, they now, on delivery, direct warehousemen to store it for their account.
The warehouse receipt was in the name of Akin & *410 Co., and its delivery to them was in the usual course of business, where no other person was known in the affair; and Baker, the warehouseman who makes this statement, also says, “we did not know the plaintiffs had any interest in the transaction. If I had known there was a sale of corn by Hoyt & Co., I should have sent them the returns as is usual.”
It further appears, that in the year 1868, among some partiesin the trade, the practice, as to what person should receive the returns from the warehouse, depended largely upon the character of the purchaser.
Mr. Lainbeer, a witness, says : “Ihave been in the storage business since the year 1845; I think the seller has a duty to perform in letting warehousemen know something about it.”
To overcome plaintiffs’ claim that Akin & Co. were not to have delivery or title before payment, and to show that the parties had dealt otherwise, proof "was given by the defendants, Akin & Co., of five different transactions ■ in grain between them and the plaintiffs, covering a period of six months immediately before the transaction in suit; and the plaintiff Hazeltine says, “in those cases we did not get the warehouse receipt or bills of lading.” And it also appears that although plaintiffs had parted with the grain, and did not hold the “returns,” so called, yet that payment was not made by Akin & Co. for a period varying from five to ten days afterward. The word “ returns ” as used here and by the witnesses, is understood to refer to weigher’s certificates, warehouse receipts and bills of lading, all going together. On the part of Cammann & Morrison, it is claimed that their advances, being in good faith in the course of mercantile usage, without fraud dr notice, and upon the faith of an instrument recognized by statute as a negotiable security, they are entitled to be protected, and the well-known rule in Lickbarrow v. Mason, 3 Term R., 63, applies; that “where one of *411 two innocent parties must suffer by the fraudulent practice of a third party, he who has put it in the power of the third party to commit the fraud must bear the loss.” The rule is to be applied with care. Let us see what position the plaintiffs occupied after the contract of sale. They were instructed by Akin & Co. to deliver the grain at a certain warehouse, and they did so. The price and place of delivery were named, quantity and quality ascertained and grain "stored for* account of the buyers, and at their charge and expense, and a warehouse certificate issued in their name. Was it the duty of the warehouseman, who did not know the plaintiffs in the' transaction, to do anything for their protection ? Did they not owe a duty to the. warehouseman if they wanted the warehouse certificate from him ? In other words, taking the transaction and the testimony together, were not the plaintiff’s extremely negligent ?
But even if the warehouseman be chargeable with omission or mistake, that cannot work to the injury of a title acquired by an innocent party, in good faith, from one who had not only an interest in the property but all the indicia of title.
Possession of the receipt, under such circumstances, was possession of the "grain (4 Comst., 497, 507; Pars. Merc. L., 57-61; Brown v. Peabody, 13 N. Y. [3 Kern.], 121).
And a vendor, who parted with possession of grain, but retained the title, was held subordinate to a buyer in good faith (Rawls v. Deshler, 4 Abb. Ct. App. Dec., 18 ; S. C., 3 Keyes, 575).
Suppose the grain were destroyed in the warehouse before plaintiffs had been paid for it, if they are right in their position, the loss would have fallen on them. A case in point on this head, charging the loss on the buyer, will be found in Russel v. Carrington, 44 N. Y., 375.
*412 The case at bar is to be distinguished from some or the cases quoted by the plaintiffs’ counsel.
In Basset v. Spofford, 45 N. Y., 392, the defendant received the property from a person who, on pretense of a purchase had obtained larcenous possession, and the court says : “Had the defendant received from him the bill of lading or receipt for the goods, and dealt with him on the faith of it, a different question might arise.” In the case at bar, the possession of Akin & Co. was not in any sense larcenous, and they were dealt with by Cammann & Morrison on the faith of the receipt.
In Ballard v. Burgett,* 40 N. Y., 314, it was a part of the contract of sale that the vendor was to remain the owner of cattle, until the vendee had paid for them.
In Spraight v. Hawley, † 39 N. Y., 448, it is said : “ If the owner has done something calculated to mislead, on which a third party has a right to, and does, rely, the maxim in Lickbarrow v. Mason, would apply.”
Among the requests to charge, the court refused the following: “That if plaintiffs, after the contract of sale to Akin & Co., put them in apparent possession of the corn, whereby they were enabled to obtain the warehouse receipt, and the defendants Cammann & Morrison, having advanced on that receipt in good faith, a verdict should be rendered in their favor.” The defendant excepted to this refusal. There was enough testimony in the case, and some conflict as to facts, in the evidence given by buyer and seller, which make the request good.
The court ordered a verdict against Akin & Co., and the. jury found against the other defendants for the value of the property.
*413 The judgment should be set aside and a new trial .ordered, costs to abide event.
Barnard, J., concurs in the result, upon the ground of error, at the circuit, as matter of law, in the direction of the justice at the trial, in ordering verdict against Akin & Co.
Judgment accordingly.

 Reported below in 47 Barb., 646.

 Reported below as Dudley v. Hawley, 40 Barb., 397.