## Common Pleas.

*General Term—March,* 1883.

## MARY MEAD, RESPONDENT, ARCHIBALD JACK, AND ANOTHER, APPELLANTS.

Where a married woman, living with her husband, buys furniture with her own savings and places it in the rooms occupied by herself and her husband, in which the husband has also some furniture, a public cartman, who, in her absence, under employment by the husband, takes all the furniture from the rooms, including that belonging to the wife, and delivers it to the husband, is liable to the wife for its conversion. .

The plaintiff was a married woman, living with her husband in the city of New York.   From her own savings she bought certain furniture, which she placed in the rooms occupied by herself and her husband, in which the husband had also some furniture.

In December, 1881, while the plaintiff was absent, the defendants, who are public truckmen, were employed by the husband to remove all the furniture in

the rooms occupied by himself and his wife, and they accordingly came with a truck and took all the furniture, including that belonging to the wife, and delivered it to the husband at the Desbrosses street ferry.

The plaintiff, having demanded the furniture from the defendants, and delivery thereof not being made, brought this action to recover damages for its conversion.

The learned justice before whom the action was tried gave judgment for the plaintiff, and from this judgment this appeal is taken.

*S. G. Derrickson*, for defendants and appellants.

*Charles Blandy*, for plaintiff and respondent.

VAN BRUNT, J.—The question presented upon this appeal is one which involves considerations of considerable nicety, and as to which as far as I have been able to learn there have been but few decisions. Upon the argument of the appeal no authorities were cited by counsel, nor was our attention called to any elementary principle which seemed to be entirely applicable.

The case of Fitch v. Rathbone (61 *N. Y.* 579) settle the question if any authority were needed that a married woman by mingling her own household furniture with that of her husband in the house in which they both live does not thereby lose the title to such furniture and may maintain an action for the conversion thereof. The plaintiff in this action, therefore, could maintain this action against any person who had converted her property, and the only question is : Did the acts of the defendants render them liable in this action ?

In the case of Dudley v. Hawley (40 *Barb.* 397) the question of what amounts to a conversion, and under what circumstances an innocent party may be held

liable is discussed at length, and a large number of authorities are cited and criticised, and the rule as laid down is—"While no liability is incurred by the purchase or acceptance of goods in ignorance of the title of the true owner, unless they are subsequently disposed of to a third person, or appropriated to the use of the vendee or bailee, yet that the benefit of this principle cannot be claimed, without proving that they came to his hands through a delivery made by the wrongdoer, and without any participation in the tort of the latter other than is necessarily implied in innocently receiving that which there is no right to give. And the better opinion would seem to be that ignorance of the defendant, of wrong done by the person from whom he receives the goods will not protect him from responsibility for subsequent acts amounting to a conversion or asportation, although done in good faith and without a knowledge of the true state of the title, nor unless his share in the transaction has been simply passive, and has been limited to accepting and paying for the goods in the usual course of business."

The case of Thorp *v.* Burling (11 *Johnson*, 285) seems to be very nearly the same in its facts as the case at bar. In that case the question was whether a cartman who, at the request of a party, went with him to a stable and took goods there, and put them on his cart and carried them away and delivered them to the party employing him, was liable in an action of trover for the goods. SPENCER, J., in delivering the opinion of the court, observed: "I consider him as much a trespasser as the other defendants; he was one of the persons who removed the plaintiff's goods from the place where they had been deposited by the plaintiff's agents. It is true he did this at the request of other persons, but he was by no means bound to obey their orders or yield to their request. He was a voluntary agent and an actor in an unlawful transaction; and he

Mead *v.* Jack.

could not but perceive that it was a hazardous enter-
prise from the large assemblage of people on the spot. I
know of no protection afforded by the law to the de-
fendant, as a cartman, on account of his public employ-
ment; he cannot claim the exemption of a ministerial
officer, who has a warrant to do a lawful act from a magis-
trate or court having jurisdiction to grant such warrant,
in which case the officers would be bound to obey, and
the law would protect him. Here the defendant was
not bound to obey, and he consequently acted at his
peril. Had the other defendants actually reduced the
goods to their possession, and had the cartman then
received the goods from them to carry, he would not
have been liable. As the case stands I think he cer-
tainly is responsible with the other defendants."

The most favorable view of the law for the defend-
ants in this case which can be taken is, therefore, that
they must show, in order to excuse themselves, that the
goods came to their hands by delivery from the wrong-
doer, and without any participation in the tort of the
latter. The evidence, however, shows affirmatively
that they did actually participate in the removal of
the goods in the tort of the husband. The reducing
of the goods to the possession of the husband was done
by the defendants in taking them from the house and
carting away, and brings the case precisely within the
rule laid down in Thorp *v.* Burling (*supra*).

It is true that the learned judge who delivered the
opinion in that case states that the cartman could not
but perceive that it was a hazardous enterprise from
the large assemblage of people on the spot; but this
circumstance does not seem to have had any effect
upon his decision, because the question of liability is
stated by him to depend upon an entirely distinct
fact, viz. that he was an actor in an unlawful transac-
tion.

Applying the principle which is thus derived from

the cases to the case at bar, the liability of the defendants seems to be established, they having been actors in a transaction by which the plaintiff's goods were taken, and they not having received the goods from the husband after he had reduced them to possession.

The judgment should be affirmed.

VAN HOESEN, J.—On the argument I put this question to the counsel: Suppose that these goods had been delivered by the husband to the Hudson River Railroad Company, would the company have been liable in conversion if it had transported the goods to one of its stations?

I think the company would not have been liable, because in that case the goods would have been reduced by the husband to his own possession before the delivery of them to the company; and as Judge VAN BRUNT had said, a carrier is not guilty of a wrongful conversion who merely carries goods which, before their delivery to him, have been reduced by a trespasser to his own possession.

In this case the plaintiff sues in trespass for a wrongful taking, and there is evidence to show that the taking was under circumstances that must have aroused suspicion in the mind of Strahan, who actually removed the goods. As to the right of Mead to order the carrying away any articles that belonged to the plaintiff, Strahan knew that the plaintiff and Edwin Mead were husband and wife, and the fact is proved that some of the goods were bought by the plaintiff from Jack and Strahan, the defendants. Strahan swears that Mead begged him not to tell the plaintiff where the goods had been taken, and this at the very time they were carried away. Such a request at such a time certainly must have dispelled the belief that the husband, in ordering the removal, was acting as the agent of the

wife.   This case is therefore not within the decision of Church v. Landers (10 *Wend.* 79).

The defendants knew that Mead was taking the goods in disregard of any claim that the plaintiff might have had upon them, and they assisted him in taking them.

# Common Pleas.

## General Term.

