THOMAS D. PENFIELD, Appellant, *v.* JOHN L. SAGE, as Surviving Partner of CHAUNCEY S. SAGE, Deceased, Respondent.

*Personal property purchased by a judgment creditor at an execution sale — conversion thereof by a third party — change in property by manufacture — measure of damages — referee's conclusions upon conflicting evidence.*

A judgment creditor cannot sustain an action against a wrongdoer for taking out of the possession of the officer property which has been levied upon under an execution upon his judgment, but when the judgment creditor has acquired title to personal property, by purchasing it at the execution sale, he may recover it or its value from a third party to whom it had been contracted to be sold by the judgment debtor intermediate the levy and the execution sale, and who has wrongfully taken possession of it after the execution sale.

The General Term will not, in a doubtful case, tried by a referee, and decided upon conflicting evidence, assume the place of the referee, and determine from the mere reading of the evidence who has told the truth, or is best entitled to credit; but where there is evidence in the case tending to support the conclusion reached by the referee, his conclusion upon the facts produced before him will be accepted.

Where, in an action for conversion, it appears that the property was taken by the defendant in the shape of raw material, and changed by him into a new form, as logs into lumber, but it is not found that the conversion was willful or an intended defiance of the plaintiff's known title to the property, the measure of damages should be limited to the value of the original article in its original location.

APPEAL by the plaintiff, Thomas D. Penfield, from a judgment of the Supreme Court, entered in the office of the clerk of Oneida county on the 2d day of April, 1892, upon the report of a referee in favor of the plaintiff awarding the plaintiff thirty-six dollars and eighty-five cents damages, and allowing the defendant the sum of $158.04 costs, and offsetting the damages against the costs, and leaving a judgment in favor of the defendant for $121.19.

Plaintiff's complaint averred that the defendant's firm "took and carried away birch and maple lumber, and converted the same to their own use;" and that the plaintiff "waives the tort growing out of the transaction aforesaid." The answer contained denials of the allegations of the complaint. The report of the referee awarded damages in the sum of thirty-six dollars and eighty-five cents.

*A. C. & E. C. Woodruff* and *William Kernan,* for the appellant.

*S. C. Huntington & Son,* for the respondent.

HARDIN, P. J. :

*Barker* v. *Mathews* (1 Den. 335) is an authority to the effect that the plaintiff, a judgment creditor, "cannot sustain an action against a wrongdoer (the defendant here) for taking property out of the possession of the officer." That case was adverted to by GRIDLEY, J., in *Marsh* v. *White* (3 Barb. 523), but the doctrine was not disturbed. Plaintiff's execution upon a judgment against Burritt, having been issued to the sheriff of Oswego county, was levied on the property of and in the possession of Burritt on the 19th of March, 1888, and full notice thereof was given to Burritt, the judgment debtor. The sheriff posted his notices of sale, and in pursuance thereof sold the logs lying in the yard at Burritt's mill on the 22d of May, 1888, to the highest bidder, being the plaintiff; and whatever title the plaintiff acquired was derived under such sale and the purchase by him under the execution. Although the logs, after the purchase thereof by the plaintiff, were cut into lumber and hauled to Williamstown, some nine miles distant from the mill, which was at Redfield, the plaintiff, in virtue of the title acquired by him, was authorized to pursue the lumber and take possession thereof, he not having given Burritt or anyone else any authority to convert the logs into lumber, or to make sale of the lumber. (*Silsbury et al.* v. *McCoon et al.*, 3 Comst. 379; *Dudley* v. *Hawley*, 40 Barb. 397; *Hughes* v. *U. P. Lines*, 119 N. Y. 426.) In March, 1888 (intermediate the levy and the sale), Burritt entered into a contract with the defendant's firm whereby he agreed to sell and deliver a quantity of lumber to the firm, and in pursuance thereof he delivered a quantity to the defendant's firm, and at the trial a question arose as to how much of the lumber arising from the logs bid off by the plaintiff was delivered to the defendant's firm subsequent to the 22d day of May, 1888, the day of the plaintiff's purchase. That question seems to have been sharply and resolutely litigated at the trial before the referee. There was a conflict in the evidence which called upon the referee to exercise his judgment as to where the truth was to be found after considering all the evidence before him on the question. He reached the conclusion that the defendant's firm only received 5,000 feet derived from the logs purchased by the plaintiff at the sale after the plaintiff acquired title under the execution sale. We are asked to overturn his find-

ing, and reference is made to quite a volume of evidence given by the plaintiff warranting a conclusion contrary to the finding of the referee; but as there was evidence given in behalf of the defendant which tends to support the conclusion reached by the referee, we are constrained, upon giving such influence to the findings of the referee as we think they are entitled, to accept his conclusion upon the facts produced before him. (*Roosa* v. *Smith*, 17 Hun, 138.) In the course of the opinion delivered in that case BOARDMAN, J., said: "But we think it very clear that a General Term cannot in a doubtful case upon conflicting evidence, like the one under review, assume the place of the referee and determine from the mere reading of the evidence who has told the truth, or is best entitled to credit. This would be imposing upon us a duty unsafe to exercise and dangerous in its ordinary use. It would make of a referee to try an issue simply a referee to report the testimony to this court, which in such cases would review nothing but the evidence, giving such a decision as in its judgment upon the evidence is just." The rule as thus stated has been adopted, approved and applied in numerous cases by this court. (*Teeter* v. *Teeter*, 47 N. Y. St. Repr. 579, and cases cited in the opinion.)

(2) The referee in awarding damages to the plaintiff allowed the value of the lumber which he finds was converted by the defendant's firm according to the value of the plaintiff's interest therein at the mill in Redfield, where the same was sawed, instead of at the value thereof enhanced by the expense of drawing to Williamstown, nine miles distance from the mill; thus awarding to the plaintiff the value of the thirty-five birch and maple logs containing the 5,000 feet, and the referee states the value thereof to be thirty dollars, and for that sum, with the interest thereon, he awards the plaintiff damages and a judgment therefor, and he finds that the defendant's firm "converted the same to their own use;" and he also finds that, "on May 22d, 1888, said firm of S. Sage & Son had knowledge and notice of said levy and sale, and Chauncey S. Sage, one of the members thereof, forbid the sale on that day." The referee did not find that the conversion by the defendant's firm was willful and an intended defiance of plaintiff's known title to the property.

In section 503 of Sedgwick on Damages (8th ed. vol. 2, p. 88), in speaking of the rule of damages, he states that the prevailing view

is that if the defendant acted in good faith "the measure of damages is the value of the property as it was just before the defendant's wrongdoing began." The author then proceeds to refer to *Forsyth* v. *Wells* (41 Penn. St. 291, 294), and in the course of the opinion in that case it is said : "Where the defendant's conduct, measured by the standard of ordinary morality and care, which is the standard of the law, is not chargeable with fraud, violence or willful negligence or wrong, the value of the property taken and converted is the measure of just compensation. If raw material has, after appropriation and without such wrong, been changed by manufacture into a new species of property, as grain into whiskey, grapes into wine, furs into hats, hides into leather, or trees into lumber, the law either refuses the action of trover for the new article or limits the recovery to the value of the original article. Where there is no wrongful purpose or wrongful negligence in the defendant, compensation for the real injury done is the purpose of all remedies ; " after the quotation which we have given, the author adds, " This case is generally followed."

A discussion of the rule is found in *Hyde* v. *Cookson* (21 Barb. 92). In that case it was held : " Where a manufacturer has expended his money and labor, in good faith, upon property, in pursuance of a contract with the owner, he cannot be regarded as a wrongdoer or deprived of the enhanced value which he has given to the property, in an action by the owner, sounding in damages."

We think the plaintiff was not prejudiced by allowing a witness to testify that it was worth four dollars per thousand to draw the lumber from Redfield to Williamstown, nor by evidence that it was worth three dollars per thousand " to saw such lumber in 1888." The foregoing views lead us to an affirmance.

MERWIN and PARKER, JJ., concurred.

Judgment affirmed, with costs.